Kennedy, X,
delivered the opinion of the court.
This case presents but one question, and that is, whether the finding of the inquest shows that John Beaumont was non compos mentis, within the meaning of this phrase or term, as used in the sixth section of the fifth article of the constitution, whereby the Supreme Court, and the several Courts of Common Pleas of this State, among- other things, are “ invested with the power of a Court of Chancery, so far as relates to the care of the persons and estates of those who are non compotes mentis.” On the part of the relator it has been argued, that according to the general sense and understanding of this term, as received and acted on in Chancery, the state and condition of Beaumont, as represented by the inquest, falls clearly within it; and in support of this Sir Wm. Blackstone has been vouched; where, in the second volume of his Commentaries, 304, he says, “ a lunatic, or non compos mentis, is one who hath had understanding, but by disease, grief, or other accident, hath lost the use of his reason. A lunatic, indeed, is properly one that hath lucid intervals: sometimes enjoying his senses, and sometimes not; and that frequently depending on the change of the moon. But under the general name of non compos mentis, (which Sir Edward Coke says is the most legal name,) are comprised not only lunatics, but persons under frenzies, or who lose their intellects by disease; those that grow deaf, dumb, and blind, not being barn so ; or such, in short, as are judged by the Court of Chancery incapable of conducting their own affairs.” It is this latter sentence that is relied on; for which, it may be observed, the learned commentator cites no authority. Mr. Fonblanque, in his Treatise on Equity, vol. I. page 63, note, p., has transcribed the above passage, and observes that he was induced to do so “ in order to obviate *54 the error into which the learned commentator seems to have fallen, in the concluding sentence. He then proceeds by saying, that “ the rules of judging upon the point of insanity being the same at law and in equity, (Osmond v. Fitzroy, 3 P. Williams, 130 Bennett v. Vade, 2 Atk. 327,) the Courts of Chancery cannot assume any bind of discretion upon the subject; and, therefore, in Ex parte Barnsley, 3 Atk. 168, the return of the inquest, stating “ that W. B. was at the time of taking the inquisition, from the weakness of his mind, incapable of governing himself, and his lands and tenements,” was held illegal and void; and many adjudged cases being cited to the same effect, Lord Hardwicke congratulated himself that, except in two or three instances, the return had been that he is lunaticus, or non compos mentis, or insance. mentis, or, since the proceedings have been in English, of unsound mind; which amounts to the same thing.” And afterwards, in 1751, Lord Hardwicke, in Lord Donegal’s case, 2 Ves. 407, according to the same principle, refused a commission of lunacy; though there appeared to be an extreme degree of weakness of understanding and imbecility of mind on the part of Lord Donegal.
In order, however, to come to a correct conclusion on the present question, it is proper to inquire and to ascertain first, whether the term non compos mentis, had not acquired a legal and technical meaning at, and anterior to the formation of the constitution of this state, in 1791; because, if it had, I take it, that we are bound to interpret it accordingly; and this, or any other Court in the state, has no power or authority to change it, so as to include any other description of persons in a proceeding of lunacy, than such as shall appear to come fairly within the meaning so affixed to it. Seeing we have derived the most of our legal terms and phrases, as well as principles from the English Common Law, a reference to it, and the decisions of the Courts of England in relation thereto, may not be amiss, in order to obtain some light upon the subject. Littleton, section 405, speaks of a man of non sane memory, as one who is non compos mentis; upon which Lord Coke, in his Commentary, (Co. Lilt. 246, b, 247, a,) says, “ here Littleton explaineth a man of no sound memory to be non compos mentis. Many times (as here it appeared) the Latin word explaineth the true sense, and calleth him not, amens, demens, furiosas, lunaticus, fatuus, stultus, or the like; for non compos mentis, is the most sure and legal.” Now, it is obvious that Lord C.oke considered non compos mentis not only the legal, but the sure term, and not, amens, 'demens, &c. He also divides non compos mentis into four sorts — “ 1st. An idiot, who, from his nativity, by a perpetual infirmity, is non compos mentis; 2d. He that by sickness, grief, or other accident, wholly loseth his memory and understanding; 3d. A lunatic, who hath sometimes his understanding and sometimes not, aliquando gaudet ludáis intervallis; and therefore is called non compos mentis, so long as he hath not understanding. *55 Lastly, he that, by his own vicious act, for a time depriveth himself of his memory and understanding, as he that is drunken. And this last kind of non compos mentis shall give no privilege or benefit to him or to his heirs.” And in Beverly's case, 4 Co. 124, a non compos mentis of the second sort, is described to be “ he who was of good and sound memory, and by the visitation of God lost it.” Now, it must be admitted, that there are various degrees of memory and understanding, from that of the most powerful and vigorous, down to that of the most abject and imbecile, yet it is perfectly manifest that Littleton and Lord Coke did not consider a non compos mentis as embraced within any of the several grades of mind, but as one wholly destitute of it, at least occasionally, that is, of both memory and understanding. And such, I apprehend, was the prevailing sentiment down to the time of Lord Hardwicke, who, in 1745, decided the case of Barnsley, already mentioned, in conformity to it. In 3 Atk. 173, he says, “ being non compos mentis, of unsound mind, are certain terms in law, and import a total deprivation of sense; now weakness does not carry this idea along with it; but courts of law understand what is meant by non compos, or insane, as they are words of a determinate signification.” . Then he gives Lord Coke for authority, “ that they are persons of non sane memory;" and adds, “ non compos mentis is used in the statute of limitations, so that it is legitemated now, under several acts of parliament.” Hence it would appear, that non compos mentis had become a technical term in the English law, of fixed and determinate import, denoting a person entirely destitute or bereft of his memory and understanding. And as conveying this idea, it was clearly introduced into acts of legislation in Pennsylvania, while an English province ; for instance, in the “ act for the limitation of actions,” passed the 27th of March, 1713. And since we became an independent state, it has been uniformly used by our legislature in all their acts, wherever it has been employed, in the same sense. This being the case, it cannot be doubted for a moment, but the words, non compotes mentis, were used by the framers of the constitution, for the purpose of giving the courts power to appoint committees, to take care of the persons and estates of such persons only, as should be found to be wholly void of memory and understanding, or in other words, of unsound mind, and not of such, as had, according to the finding of the inquest in this case “ by reason of old age and long continued sickness, become so far deprived of reason and understanding, as to be wholly unfit and unable to manage his estate.” The reasonable inference to be drawn from the finding of the jury here is, that Beaumont was not wholly deprived of his reason and understanding ; that, on the contrary, he still retained a portion of it, but not sufficient, in their estimation, for the management of his estate, though enough, it would seem, for the care of his person; because *56 they have said nothing of his incompetency for that purpose; and of course, the court would not have been warranted in appointing a committee to care of his person, as he was not found to be of unsound mind, or incapable himself of taking care of it. The finding of the jury is somewhat similar to that in Cranmer’s case, 12 Ves. 445, where they found that “ he was so far debilitate'd in his mind, as to be incapable of the general management of his affairs , and Lord Chancellor Ershine said, in observing upon it, “ how can I tell what is so far debilitated in his mind, as not to be equal to the general management of his affairs.” He considered the finding too ambiguous, and therefore quashed the inquisition ; though he was of opinion, that the evidence would have justified the jury in finding that the party was of unsound mind,; “ so that he was not sufficient for the government of himself, his manors, &c.,” all which was found by a subsequent jury and held good. It is true, however, that the Court of Chancery in England, has of late gone beyond what Lord Hardwiche, sitting as Chancellor, thought was his proper limits ; and has applied commissions, not de lunático enquirendo, however, which are uniformly applied to the case of all such as are considered non compos mentis, but commissions in the nature of those of lunacy, to cases wffiere there is such an imbecility of mind as renders a person incompetent to the management of his affairs, or liable to be imposed on. See 1 Wooddes. 411. Ridgway v. Darwin, 8 Ves. 65, 66. Ex parte Cranmer, 12 Ves. 447, and Mr. Belt’s note to Lord Donegal’s case, 2 Ves. 407, 408. But this latter description of persons must not be confounded with those who aró non compotes mentis; whose voluntary deeds will be set aside at once upon its being shown that they were such at the time of executing them; but in regard to the like deeds of the former, it .is only when connected with circumstances tending to show that they were obtained by fraud, that they will be set aside, Osmond v. Fitzroy, 3 P. Williams, 130, 131. Griffin v. De Veulle, 3 Wooddes. App. 16. So in Wightman v. Wightman, 4 Johns. Ch. Rep. 343, Chancellor Kent said, that idiots and lunatics are incapable of entering into the matrimonial contract; and that such marriages are ipso facto void, is a proposition too plain to be questioned. In short, the distinction between those wdio are styled non compotes mentis in law, and those who labour under extreme imbecility of mind, is very clearly maintained throughout every part of it: and in order to prevent confusion it may be important, perhaps, that this distinction should continue to be observed. > And until the legislature shall authorize the courts of this state to entertain a proceeding, with a view to deprive the latter description of persons of all control and power over their estates, they cannot take cognizance of it. The exercise of such authority over the rights of the citizens, is of too much moment to be claimed by courts, unless *57 given expressly by the constitution or some act of the legislature, which has not been done as yet. The judgment is affirmed.
Sergeant, J. having been of counsel with one of the parties, did not sit in the case.
Judgment affirmed.