# The Commonwealth *ex rel.* Euchenberg *versus* Schneider.

1. Utter and unmitigated madness or absolute and hopeless idiocy, resulting from cerebral injury or disease or want of intellect from nativity, are not the only tests of incapacity which subject a person to a commission of lunacy and the restraint of a committee.

2. That state of unsoundness of mind which incapacitates a person from taking care of his person or business, is the condition prescribed by the Act of Assembly.

3. Protection of property is one of the objects, if not the main object, of the statute.

4. Mere weakness of mind and not an abnormal condition and short of idiocy, is not a ground for a commission.

5. If there be a capacity to manage as the result of consecutive reasoning, although the management might not be such as intellectual vigor and skill might approve, a jury would not be justified in finding a party a lunatic.

6. McElroy's Case, 6 W. & S. 451, approved. Beaumont's Case, 1 Whart. 52, qualified.

October 31st 1868. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Indiana county*: No. 154, to October and November Term 1868.

In the court below proceedings were commenced October 16th 1867, by the Commonwealth at the relation of Augustus Euchen-

berg, to inquire whether Elizabeth Schneider was a lunatic, &c. On the 21st of March 1868 the inquisition finding the respondent a lunatic was confirmed by the court. The respondent traversed the finding.

On the trial of the traverse, the court (Buffington, P. J.), amongst other things, charged:—

"While mind or intellect exists, however weak or feeble it may be, the persons must be left to the management of their own affairs. It is only when the intellect is deranged and the powers of mind so obliterated that it is incapable of discrimination; the memory so gone that they could not recollect their own condition and situation of their own affairs; that they are laboring under some delusion; acting under some imaginary state of affairs that are merely the fruits of a disordered imagination, having no foundation in truth and fact, that liberty to manage themselves and property may be taken from them. So mere eccentricity upon one or more subjects; singularity of manner or conduct; habits differing from the usual habits of the society in which they move, are all insufficient to establish unsoundness of mind. Feebleness of body from age or disease, if the mind continues sound, is also insufficient. Unsoundness must be characterized by a want of ability to manage their business or take care of their property. Mere want of such ability from physical causes to manage their business is insufficient, unless founded upon delusion such as results from a want of intellect and memory; from unsoundness of mind and incapability of comprehending their own condition or that of their property or of managing it, or employing the agency of others to do so. [Until the mind is entirely blotted out, persons must be left to the management of their own affairs. As long as there is a spark of intelligence left, the law does not permit their liberty to manage themselves or property to be taken from them.]

"It is extremely difficult to define such a condition of mind as will justify a court in depriving a man of his right of personal liberty and the control of his property; and each case, differing as it does from all others, must be left to the sound judgment of a jury with such general instruction as we have mentioned."

The jury found for the respondent.

The relator took out a writ of error, and assigned for error the portion of the charge enclosed in brackets.

*A. W. Taylor* and *H. W. Weir*, for plaintiff in error, cited Act of 13th June 1836, § 67, Pamph. L. 605, Purd. 681, pl. 14; McElroy's Case, 6 W. & S. 451; 1 Beck's Medical Jur. 770; Ludwick v. Commonwealth, 6 Harris 174.

*J. M. Thompson* and *Stewart & Clark*, for defendant in error,

cited Act of 1836; McElroy's Case, 1 Beck's Med. Jur., *supra;* Const. of Penna., Art. 5, § 6, Purd. 19; Beaumont's Case, 1 Whart. 52.

The opinion of the court was delivered, January 4th 1869, by

THOMPSON, C. J.—That state of unsoundness of mind which incapacitates a person to take care of his or her person or estate or business, is a condition which, under our Act of Assembly relating to "lunatics and habitual drunkards," subjects the person to a commission of lunacy, and if so found by the inquest, to the restraint of a committee. The true and practical test under the proceeding is this. Utter and unmitigated madness, or absolute and hopeless idiocy, resulting from cerebral injury or disease, or want of intellect from nativity, are by no means the only tests. The protection of property is one, if not the main object of the statute; it is practical, that the test of liability to a commission, should depend greatly on that unsoundness of mind which discloses incompetency to its management, and the care and protection of it in a rational manner; and this is the rule in England. In Ridgway *v.* Darwin, 8 Ves. Jr. 65, the case of Miss Kendrick, Lord Eldon said, after referring to the case Ex parte Barnsley, 3 Atk. 168, decided by Lord Chancellor Hardwicke: "Of late the question, (in lunacy cases) has not been, whether the party is absolutely insane: but the court has thought itself authorized, (though certainly many difficult and delicate cases with regard to the liberty of the subject occur upon that), to issue the commission, provided it is made out, that the party is unable to act with any proper or provident management; is liable to be robbed by any one; under that imbecility of mind, not strictly insanity, but as to the mischief calling for as much protection as actual insanity."

There are numerous authorities in England to the same effect. See notes 1 and 2 to the above case. And such has been the rule in this state since McElroy's Case, 6 W. & S. 451. It was there held that the question for the jury on a traverse of an inquisition finding the party *non compos mentis,* was "whether the mind is deranged to such an extent as to disqualify the traverser from conducting himself with personal safety to himself and others, and from managing his own affairs and discharging his relative duties." All these elements concurred in that case, and hence they are grouped together.

It is not to be doubted that a finding, that the party, from unsoundness of mind, is incapable of managing his affairs, is liable to a commission, although not totally incapable of taking care of himself. The former is the test: Whart. & Stille's Med. Jurisp., § 41. Mere weakness of mind, but not an abnormal condition, and short of idiocy, is not a ground for a commission.

[Commonwealth *v.* Schneider.]

If there be a capacity to manage, as the result of consecutive reasoning, although the management might not be such as intellectual vigor and skill might approve, a jury would not be justified in finding the party a lunatic under the Act of Assembly; and of course, any instruction to that effect, would be error. This doctrine was ably discussed in the opinion of the learned judge of the Common Pleas, Judge Patton; and the opinion in McElroy's Case, was approvingly affirmed by this court.

It is manifest from these views, that the learned judge below erred in charging the jury on the trial of Mrs. Schneider's traverse, that "until the mind is *entirely blotted out*, persons must be left to the management of their own affairs. As long as there is a spark of intelligence left, the law does not permit their liberty to manage themselves or property to be taken from them."

The learned judge fell into error by following the lead of Beaumont's Case, 1 Whart. 52, which seems mainly to have been rested on Barnsley's Case, 3 Atk. 168, which we have seen Lord Eldon refused to follow in Ridgway *v.* Darwin. McElroy's Case must be regarded as a modification of the ruling in Beaumont's Case, which was that the finding of the inquest by reason of old age and long-continued sickness, has become so far deprived of reason and understanding as to be wholly unfit to manage his estate, "was an insufficient finding that the party was *non compos mentis*, so as to place him in charge of a committee." It is obvious that this decision was rested rather on a question of the disease of the mind than on its capacity to act rationally. We have seen that the latter is the practical test, while the former must often be theoretical and speculative. We regret to reverse this judgment in view of the testimony, but our views of the law constrain us to do it.

Judgment reversed, and *venire de novo* awarded.