# CHARLESTON.

LEATHERMAN *v.* LEATHERMAN, *Committee.*

Submitted October 8, 1918.  Decided October 22, 1918.

INSANE PERSONS—*Appointment of Committee—Soundness of Mind—*
*Test.*

> In ascertaining whether a person is of such unsound mind as to
> justify the appointment of a committee for him, the court should
> apply the same test as is applied in determining the mental ca-
> pacity of a grantor or testator in suits to avoid deeds and wills on
> the ground of alleged incapacity; and if he is shown to have
> sufficient mind to know and appreciate the nature and effect of
> his business transactions, notwithstanding he may display bad
> judgment, the court will not be justified in appointing a com-
> mittee to manage and care for his property.

Error to Circuit Court, Doddridge County.

Petition by F. P. Leatherman for the discharge of D. E.
Leatherman, his committee.  From an order of the circuit
court, on appeal, affirming the county court's action in refus-
ing to discharge the committee, petitioner brings error.

*Reversed, and committee discharged.*

*A. F. McCue* and *L. W. Chapman,* for plaintiff in error.
*J. Ramsey,* for defendant in error.

WILLIAMS, JUDGE:

In January, 1916, the county court of Doddridge county
appointed D. E. Leatherman committee for his brother F. P.
Leatherman on the ground that he was mentally incapable
of transacting his business, and on the 17th of April, 1917,
said F. P. Leatherman filed his petition and moved said court
to discharge the committee on the ground that he was fully
competent to transact his own business.  The matter was
heard on said petition, answer thereto filed by the committee,
and the testimony of witnesses, reduced to writing, and the
county court made an order July 20, 1917, refusing to dis-
charge the committee.  Petitioner appealed to the circuit
court of said county and the cause was there reviewed upon
the evidence taken before the county court, and on the 26th

of March, 1918, an order entered affirming the action of the county court, and to that order petitioner was granted this writ of error.

The only question presented is whether the evidence is sufficient to justify the action of the court in refusing to discharge the committee; or, in other words, is petitioner shown to be legally insane or a *non compos mentis.* At the time this matter was heard he was a man sixty-four years of age, living all alone in a small house on his own land, doing his own housework and cooking. He was married in the year 1877 and had five children. His wife separated from him, apparently without legal justification, about the year 1892, and took the children with her and refuses, he says, to permit him to visit her. A number of witnesses testifying for the committee swear that, in their opinion, petitioner was not mentally competent to transact business. But none of them say he was insane or a lunatic, or that his mind had even become impaired by age or physical infirmity. They all say his mind is as good as it ever was. His father died in the year 1912, leaving the two brothers, petitioner and his committee, as his only heirs at law. The latter administered on his father's estate and settled with petitioner for his interest therein, paying him as much as $1,230.00 as his share. This occurred in 1913, three years before the appointment of the committee. The two brothers entered into a written contract, bearing date of February 26, 1912, each acting for himself, agreeing as to the value of the personal estate and of what it consisted, how it should be administered, and each releasing and discharging the other from accounting for advancements made to them in their father's lifetime. This agreement was acknowledged by both parties and recorded. After transacting with him business of such importance it seems to come with poor grace for D. E. Leatherman to say, so soon thereafter, that his brother is incompetent to do business, especially when his condition of mind is shown to be as good as it ever was. Petitioner also transacted other important business on his own responsibility. His father must have regarded him as capable of attending to his own affairs, because it appears from the record that he conveyed to him, unconditionally, in

1884 a tract of about 70 acres of land, a part of which petitioner still owns and resides on. It also appears petitioner conveyed to his brother 22 acres of this land in April, 1902. The remaining portion of it, consisting of about 48 acres, petitioner, on the 16th of April, 1915, conveyed to one Joseph L. Powell in consideration of $500.00, reserving to himself a life estate therein. According to his testimony, said Powell was also obligated to provide for him during his life a comfortable support, and to give him a decent burial at his death, as a further consideration for the land. Powell the grantee died, and, for some reason not appearing, his heirs reconveyed the land to petitoner. This occurred after the appointment of the committee. According to the testimony the land is worth from $35.00 to $45.00 per acre, but none of the witnesses undertakes to say the consideration which petitioner was to receive for it was inadequate. In fact, many of them say they would not want to undertake the burden assumed by Powell for the land.

The foregoing circumstances and business transactions between petitioner and his brother and others, before and near the time the committee was appointed, tend to prove that petitioner was not insane or *non compos mentis,* within the legal meaning of those terms. Many persons show very bad judgment in their business dealings with others, who are not insane or of unsound mind, and if the courts were required to appoint committees for all such persons, many who are now doing business, fully confident of their own ability, would find themselves under the care of committees, and the courts would have great difficulty in finding enough competent committeemen to supply the demand.

In determining whether or not a person is of such unsound mind as would entitle a court to take from him the right of personal freedom and the right to manage and dispose of his own property, we know of no other test than the one which has often been applied by this court and courts of other jurisdictions in suits to avoid wills and deeds on the ground of the alleged incompetency of the testator or grantor. The authorities do not undertake to prescribe the degree of mental acumen necessary to enable a person to make a deed or will.

But they all seem to agree that, if grantor or testator knows and understands the nature and effect of his act, he has sufficient capacity to enable him to dispose of his property. *Nicholas* v. *Kerchner*, 20 W. Va. 251; *Deleplain* v. *Grubb*, 44 W. Va. 612; *Teter* v. *Teter*, 59 W. Va. 449; and *Black* v. *Post*, 67 W. Va. 253. In *Emerick* v. *Emerick*, an Iowa case reported in 13 L. R. A. 757, the supreme court of that state applied the same test in determining whether the court was justified in appointing a guardian for one alleged to be of unsound mind. In the footnotes to that case, in the book cited, will be found citations to other authorities sustaining it.

No witness pretends to say that petitioner had not sufficient mind to know and understand the nature and effect of an ordinary business transaction. The evidence does not make out a case justifying the court in refusing to discharge the committee, and an order will be entered here reversing the judgment appealed from and discharging the committee.

*Reversed, and committee discharged.*