*In Re: Petition of* FLORENCE DOWDEN WOOD *et al.*

(No. 9107)

Submitted April 29, 1941. Decided June 10, 1941.

*French McCray* and *Harry Shaw,* for plaintiffs in error.
*L. T. Eddy,* for defendant in error.

LOVINS, JUDGE:

Florence Dowden Wood and Rolena Dowden Core filed their petition in the Circuit Court of Marion County, to have their mother, Ruth T. Dowden, declared a mental defective, under the provisions of Code, 27-3-13. An answer was filed by Mrs. Dowden. denying the allegations of the petition. After hearing evidence in support of and against the petition, the trial court entered an order dismissing the petition and finding that petitioners failed to show that Ruth T. Dowden was insane or a mental defective as "intended and provided" in the Code section above mentioned. A writ of error was granted to that order of the trial court.

Code, 27-3-13, provides that if a person is suspected of being insane but has not been so found by a county mental hygiene commission, the circuit court of the county of which the person is an inhabitant, upon the application of any person interested and after five days notice to the person suspected, "* * * shall * * * proceed to examine into his state of mind, and if satisfied that he is an insane person or a mental defective shall so find." The section further provides that such a finding shall be authority for the appointment of a committee for such person by the county court. The petition filed by plaintiffs in error asked that Mrs. Dowden be adjudged a mental defective and incompetent.

The errors assigned are the failure of the trial court to find and adjudge Mrs. Dowden a mental defective, and the refusal to consider photostatic copies of bank deposit sheets, showing the status of the accounts of Mrs. Dowden, her son, James E. Dowden, Jr., and his daughter, Rolena Dowden.

.It appears from the record herein that Mrs. Dowden's husband, Dr. James E. Dowden, Sr., deceased, devised and bequeathed his entire estate to his wife, including real estate in Fairmont worth about $100,000.00. Mrs. Wood, Mrs. Core, and James E. Dowden, Jr., are the only children of Mrs. Dowden. After Dr. Dowden's death, Mr. Core assisted his mother-in-law in the management of her estate. Upon Mr. Core's death, James E. Dowden, Jr., took charge of his mother's affairs until 1933 or 1934, when an attorney in Fairmont was given a power-of-attorney to look after Mrs. Dowden's business affairs. This was revoked in November, 1937, and Mrs. Dowden gave her son James a power-of-attorney to manage her estate. Much evidence was presented by plaintiffs in error, tending to show that James E. Dowden, Jr., is a failure as to business and domestic affairs, and that he is addicted to alcohol, and is squandering his mother's estate, taking advantage of her feeble-mindedness. Following this line of evidence, the aforementioned bank deposit sheets were offered to show that from the time James was vested with the power-of-attorney in 1937, his mother's account shows no further deposits, while the accounts of himself and his daughter grew. Also it is shown that about a year and a half after the last power-of-attorney was executed, James obtained a deed from his mother conveying to him about one-half of her valuable income-producing real estate, under alleged questionable circumstances.

The evidence mentioned in the preceding paragraph, we hold, departs from the issue developed by the petition and the answer denying its allegations. This proceeding is based solely upon the statute referred to, and by that statute the circuit court could find only that Mrs. Dowden is an insane person or a mental defective. As stated, the petition sought a finding that Mrs. Dowden was a mental defective. We find no error, therefore, in the trial court's failure to consider the bank deposit sheets since they throw no light on the state of Mrs. Dowden's mind. Likewise, assuming that the son's wastefulness, lack of sobriety, or business ability, and the foolishness of Mrs. Dow-

den in turning over her affairs to him, have all been firmly established by the record, we should not reverse the judgment of the trial court. As a general rule, courts have no jurisdiction or authority to interfere with the right of persons to dispose of property in any manner they may see fit and especially, in a statutory proceeding expressly for the purpose of determining mental defectiveness, such factors have little bearing. We express no opinion, however, as to the validity of the conveyance of real estate, or any transfer of personal property made by Mrs. Dowden to her son.

It is asserted that the intention of the statute under which this proceeding was brought is to protect such persons "as Mrs. Dowden is shown by the evidence to be", referring to the materiality of the circumstances surrounding the management of her property and the squandering thereof. In three of the four cases cited in support of this proposition, counsel overlook the fact that the statutes there involved expressly provide for a determination of whether a person is insane or mentally unsound, so that he is unable to look after his business or property. These cases are *Johnson* v. *Deposit Co.,* 104 Md. 460, 65 Atl. 333; *Schulmeyer* v. *McAllister,* 171 Cal. 340, 153 P. 233; *In Re Coburn,* 11 Cal. App. 604, 105 P. 924. The other case, *Commonwealth* v. *Schneider,* 59 Pa. 328, involves a Pennsylvania enactment of June, 1836, wherein the proceeding could be brought only by a relative by blood or marriage or a person interested in the estate in order to preserve the property for his benefit. Contrast our Code, 27-3-13, wherein "any person interested" may bring the proceeding in the circuit court, or Code, 27-3-3, wherein "any resident of a county" may so proceed before the mental hygiene commission. It should be pointed out also that in the *Schneider* case the opinion includes the following: "Mere weakness of mind, but not an abnormal condition, and short of idiocy, is not a ground for a commission."

Plaintiffs in error argue that the trial court was led into error by not distinguishing between the terms "insane person" and "mental defective" as used in Code, 27-

3-13. For a definition of mental defective, they point to Code, 27-8-3, wherein mental defectives are defined for the purposes of Article 8, and which article relates solely to the West Virginia Training School. This, it is argued, reveals what the legislature meant by "mental defectives", and that "it plainly shows that a mental defective is less than insane." Prior to the Code revision of 1931, the circuit court, under the provisions of Barnes' Code, 1923, Chapter 58, Sec. 26, which section in the revised edition appears as Chapter 27, Article 3, Section 13, had only the power to find the suspected person insane, the term "or a mental defective" being added by the revisers of the Code.

We agree that the terms "insane person" and "mental defective" were intended to convey different meanings. The heading of Chapter 27, "Insane Persons and Mental Defectives" as well as the wording of Section 13 of Article 3 seem to so import. However, we cannot agree that the definition included in the article relating to the West Virginia Training School is indicative of what the legislature had in mind in adopting the 1931 revision of the Code, and adding "mental defectives" to the statute under which this proceeding was brought. In the first place, the application of Code, 27-8 is limited to "any person with mental defectiveness from birth or an early age." No attempt is made herein to show that Mrs. Dowden was inflicted with any mental infirmity during the early years of her life. The revisers' note to Article 8 states the primary purpose of the West Virginia Training School to be "the treatment and care of mental defectives in the hope of restoring their physical and mental health." This seems to be in direct contrast to a similar note appearing with Section 1, Article 5, Chapter 27, wherein the various counties are charged with certain payments for "every epileptic, idiot, imbecile, feeble-minded person, mental defective or other such incurable defective" admitted to a state institution from such counties. The revisers' note thereto calls attention to the evident intention of the legislature to require counties to pay for such insane persons as are more or less a permanent charge because incurable, as the reason for adding the words "feeble-

minded person, mental defective" to the section in their revision. Therefore, by this note, at least, the "mental defective" is placed in an incurable category—apparently more seriously impaired than an insane person, for whom provision is made by Section 7 of Article 4 for discharge from a state institution upon restoration to sanity. It must be remembered also that Section 1 of Article 5 is a statute of general application to the entire chapter while by its very terms, Article 8 is confined to one project— The West Virginia Training School.

While expressing some doubt as to what the legislature intended as the exact meaning of "mental defective" when it added that term to Section 13, Article 3, Chapter 27, in 1931, we are of the opinion, for reasons hereinbefore stated, that the enactment of, and the provisions contained in the article relating to the West Virginia Training School, can have no bearing upon that meaning in the case before us. The admission to a state institution, for the care of persons of unsound mind is different from the judicial function of ascertainment of their mental condition. Therefore, we are of opinion that a person may be declared a mental defective, notwithstanding the fact that the mental condition of such person does not come within any statutory definition herein mentioned.

Since the trial court expressly stated in its final order that plaintiffs in error failed to show that Mrs. Dowden is insane or a mental defective as intended and provided in Code, 27-3-13, the fact that we have not been referred to, and cannot point out a statutory definition of "mental defective" is not a pivotal question here.

Plaintiffs in error also assert that the trial court was influenced in its decision by the case of *Leatherman* v. *Leatherman*, 82 W. Va. 748, 97 S. E. 294, and that the *Leatherman* case does not apply. The syllabus in that case lays down as tests for the determination of whether a person is of such unsound mind that a committee should be appointed for him, the ability to make a deed or a will. The *Leatherman* case was decided before the revision of the Code, by which the words "or a mental defective" were added to what is now Section 13, Article 3, Chapter

27, and which change has hereinbefore been discussed. This change in the statute has added another element since the decision in the *Leatherman* case, *supra*. There is a mental condition not clearly defined by statute which may apply to persons who are not insane, yet are subnormal as to mental capacity, and while the same evidence may be presented and relied upon to set aside a deed or will as in the instant case, generally, in addition thereto, the elements of fraud and undue influence are present where the validity of a deed or will is brought in question. Having in mind this situation, we are of opinion that it requires clearer proof in cases where the sole issue is whether a person is a mental defective or not, than in those where the mental capacity of a testator or grantor is the subject of inquiry. This is especially true where the mental condition of a testator or grantor is not stressed as much as the elements of fraud and undue influence.

Much testimony was taken by both sides bearing directly upon the condition of Mrs. Dowden's mind in the past five or six years. Lay and medical witnesses testified regarding same and Mrs. Dowden, eighty-five years old at the time of the taking of the testimony and suffering from natural infirmities of her advanced age, was also called to the stand. We do not feel it necessary to detail any of this testimony. It is conflicting and suffice it to say, as counsel admit, that the record shows Mrs. Dowden to be eccentric, even peculiar in the conduct of her home. Three physicians testified in support of Mrs. Dowden's mentality and one physician testified that she is defective mentally. We cannot say that the finding of the trial court is unsupported by the evidence, or contrary to the plain preponderance thereof. The trial court heard the witnesses, observed their demeanor and is in a far better position to pass upon the weight and credibility of their testimony than this Court.

In this statutory proceeding, the circuit court was empowered to make a finding upon an examination into the state of mind of the person suspected of being insane. A finding has been made upon conflicting evidence. Not

being able to hold that this finding is against the plain preponderance of the evidence, we accord to it the same conclusiveness as a finding by the trial court in a law action on facts submitted to it in lieu of a jury. As stated in *Hysell* v. *Manufacturing Co.*, 46 W. Va. 158, 33 S. E. 95, point 2 of the syllabus: "Judgments on the verdict of a jury, or demurrer to the evidence in favor of the demurree and the finding of a circuit court in lieu of a jury waived, are governed by the same principles, and entitled to equal respect in this court, and they will not be reversed unless they are plainly contrary to the decided preponderance of the evidence." See also *Clark* v. *Export Insurance Co.*, 105 W. Va. 473, 143 S. E. 101; *Delaware Co.* v. *Cotten*, 113 Va. 563, 75 S. E. 122. This principle has long been established in equity practice in this jurisdiction as to a finding of fact by the trial chancellor, which will not be reversed upon appeal unless clearly wrong. *Litz* v. *Bank*, 120 W. Va. 281, 197 S. E. 746, and cases cited therein.

We therefore affirm the judgment of the Circuit Court of Marion County.

*Affirmed.*