597 S.E.2d 901

**Grady D. HAGER, Plaintiff Below, Appellant**

v.

**Pauline Kay HAGER, Defendant Below, Appellee**

No. 29688.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 7, 2001.

Decided Nov. 29, 2001.

Dissenting Opinion of Justice Davis Dec. 7, 2001.

Davis, J., dissented with opinion.

G. Wayne Van Bibber, Esq., Charleston, for Appellant.

Nelson R. Bickley, Esq., Bickley & Jacobs, Charleston, for Appellee.

**PER CURIAM.**

This is an appeal by Grady D. Hager from an order of the Circuit Court of Boone County which denied a motion made by him under Rule 60(b) of the West Virginia Rules of Civil Procedure to alter a judgment in a divorce case on the ground that fraud was used to obtain the judgment.

## I.

### FACTS

The parties to this proceeding, Grady D. Hager and Pauline Kay Hager, were divorced by an order entered by the Circuit Court of Boone County on April 1, 1999. In granting the divorce, the circuit court adopted a family law master's recommendation that the appellant, Grady D. Hager, pay his former wife, Pauline Kay Hager, $800 per month alimony, that he provide her with medical insurance, and that he pay $10,000 of her attorney fees.

In the proceedings before the family law master, the appellee, Pauline Kay Hager, had taken the position that she had never been previously employed outside the house and that she was disabled and incapable of work-

ing. The last hearing was held before the family law master on June 10, 1996.

Based upon the representations made at the hearings, the family law master found that Pauline Hager had no income earning ability whatsoever, no training, no employment skills or working experience. As a consequence, the law master recommended that the appellant pay $800 per month alimony and pay for Pauline Hager's health insurance and pay her attorney fees. The circuit court, after reviewing the case, adopted the family law master's recommendation.

Subsequent to entry of the court's judgment in the case, the appellant learned that Pauline Hager had actually been working and earning money, and as a consequence, he filed a motion for the court to modify that alimony award.[1] The circuit court conducted an evidentiary hearing on the motion on July 8, 1999. At that hearing, the appellant took the position that Pauline Hager had committed fraud on the family law master and the court when she took the position that she had never worked outside the home and that she was disabled and incapable of working. To support his position, he produced the testimony of five witnesses, pay checks and photographs of Pauline Hager performing manual labor.

At the conclusion of the hearing, the circuit court entered an order finding that the appellant had failed to meet the burden of proof required under Rule 60(b) of the West Virginia Rules of Civil Procedure and refused to modify the alimony award.

In the present appeal, the appellant contends that the circuit court erred in holding that he had failed to meet his burden of proof and in refusing to modify the alimony award. He also claims that the circuit court erred in failing to make any findings as to the facts upon which the court's ruling was based.

## II.

### STANDARD OF REVIEW

■ In Syllabus Point 4 of *Toler v. Shelton,* 157 W.Va. 778, 204 S.E.2d 85 (1974), this Court stated:

---

1. Although the motion was not initially designated as a motion under Rule 60(b) of the West

In reviewing an order denying a motion under Rule 60(b), W.Va.R.C.P., *the function of the appellate court is limited to deciding whether the trial court abused its discretion in ruling that sufficient grounds for disturbing the finality of the judgment were not shown in a timely manner.*

## III.

### DISCUSSION

■ As has been previously indicated, the appellant's principal claim in the present proceeding is that he made a sufficient showing to justify the setting aside of the court's alimony award.

Rule 60(b) of the West Virginia Rules of Civil Procedure provides that a court may, after entry of a final order, relieve a party from that order for fraud. The Rule provides, in relevant part:

(b) *Mistakes; inadvertence; excusable neglect; unavoidable cause; newly discovered evidence; fraud, etc.* On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ....

The appellant's specific claim in the present case is that his former wife, Pauline Hager, represented to the family law master who handled the case that she had not worked when, in fact, she had worked and that she was incapable of working when, in fact, she was capable of working. Pauline Hager, on the other hand, claims that the record shows that any work which she might have engaged in occurred after the last hearing before the family law master and that as a consequence, she in no way misled the family law master or the court.

The record shows that during the June 10, 1996 hearing, Pauline Hager specifically indicated that she had never been employed

---

Virginia Rules of Civil Procedure, the parties and the court later treated it as such a motion.

outside the home, that she had never received any work training or work education. She specifically stated that her sole income was $470 per month from an SSI check. She was asked: "Q. Do you have any sources of income other than that?" She responded, "A. No, I don't."

In the hearing after the appellant moved to set aside the alimony award, the appellant called as a witness Cathy Turley, who testified that Pauline Hager had worked for her mother and that her mother paid her for doing so. Another witness, Charles Burnside, who owned a club called the Riverview County Club, testified that Ms. Hager had worked for the country club serving people and bussing tables, and that she was able to do the required work. Additionally, Kimberly Lilly testified that she had observed Pauline Hager mowing her lawn and using a weed eater without difficulty, and she expressed the opinion that Ms. Hager was capable of doing manual work. She had also observed Ms. Hager lift and assist her mother.

Finally, the appellant called Pauline Hager herself as a witness. Ms. Hager, upon examination, testified that her mother paid her $5 per hour to do work, and that prior to working for her mother, she had worked at the Riverview Country Club for $4.50 per hour. Her job at the club consisted of preparing and serving food and clearing tables. When asked when she had worked at the country club, she indicated 1995. She also indicated that she had worked in 1994. When asked why she had not notified the family law master about her work at the country club, she responded: "Nobody asked me."

In the present proceeding, the appellant takes the position that the testimony and other evidence adduced at the hearing on his motion to set aside the alimony award plainly shows that Pauline Hager did not testify truthfully before the family law master and that her testimony related to a material fact in the case, that is, her previous work history and her ability to work. The appellant argues that she, in effect, committed fraud on the court. The appellant also takes the position that in view of this, the trial court abused its discretion in not setting aside the

portion of the April 1, 1999 order awarding her alimony. In the alternative, he requests that this Court remand the case with the instructions that his alimony obligation be recalculated based on the fact that Pauline Hager has the capacity to earn at least a minimum wage income.

In *Gerver v. Benavides,* 207 W.Va. 228, 530 S.E.2d 701 (1999), this Court indicated that a judgment may be set aside for fraud or misrepresentation discovered after entry of the judgment. The Court defined fraud as anything falsely said or done which injures the property rights of another.

In this Court's view, the record as developed rather plainly shows that Pauline Hager either testified falsely, or failed to testify fully, before the family law master relating to facts which are of relevance to her entitlement to alimony. She, in effect, took the position that she had never worked and that she was disabled and incapable of working. At the subsequent hearing on the appellant's motion to set aside the judgment, substantial evidence was introduced, including the testimony of Pauline Hager herself, which showed that she had worked and was capable of working. The family law master's recommendation, and the judgment ultimately entered by the circuit court, awarded the appellee alimony based upon the finding that she was incapable of working.

This Court believes that Pauline Hager, in failing to testify fully and completely and honestly before the family law master, in effect, acted falsely and committed fraud within the meaning of *Gerver v. Benavides, id.*, and that the circuit court should have set aside the alimony award in this case and reconsidered it in light of the fact that, at the very least, Pauline Hager is capable of earning a minimum wage.

For the reasons stated, the judgment of the Circuit Court of Boone County is reversed, and this case is remanded with directions that the circuit court reconsider Pauline Hager's alimony award in light of the showing of her capacity to work.

Reversed and remanded.

Justice DAVIS dissents.

DAVIS, J., dissenting.

(Filed Dec. 7, 2001)

The majority opinion concluded that Mrs. Hager committed fraud in obtaining alimony from her former husband, Mr. Hager, by concealing her prior work history and ability to work. Consequently, the majority opinion has remanded this case to the circuit court to vacate the prior alimony award. My review of the evidence does not support the majority's finding that Mrs. Hager committed fraud and is capable of working outside the home. In fact, the majority opinion has so misstated the evidence that I believe the opinion is an effort to erode the past twenty-five years of domestic law in the State of West Virginia and is the beginning of the erosion of alimony for women. Therefore, for the reasons set forth below, I dissent from the majority's decision.

### A. The Record Demonstrates That Mrs. Hager Is Unemployable

The initial disturbing factor I find in the majority opinion involves the selective inclusion and exclusion of relevant facts. The majority opinion has correctly pointed out that, prior to the final divorce hearing in this case, Mrs. Hager engaged in remunerative work. The majority opinion also correctly determined that Mrs. Hager did not reveal her prior remunerative work to the family law master and trial judge. From these two findings the majority has concluded that Mrs. Hager committed fraud in this case and that she is capable of gainful employment outside the home. If that evidence was the sum total of the evidence in this case, I would accept the ultimate conclusion reached by the majority opinion. However, other facts place the majority's scant findings into the proper con-

text, and reveal that the evidence as a whole does not support its conclusion.

1. *The work history of Mrs. Hager did not establish fraud.* The parties were married in 1964. Mr. Hager filed for a divorce in 1989.[1] During the period 1964 to 1989, Mrs. Hager was a homemaker and did not work outside the home. Mr. Hager worked for CSX Railroad during the marriage. While the divorce was pending, Mr. Hager had a gross monthly income of $3,465.68; while Mrs. Hager's gross monthly income from SSI was $446.00.

The evidence further revealed that in 1991 Mrs. Hager was "employed" for three weeks as a cook in the home of an elderly man. She was paid a nominal sum in cash for cooking for the elderly man. There was also evidence that prior to the divorce Mrs. Hager was paid by a home healthcare agency to take care of her invalid mother for a few months, during a time when the actual home healthcare worker was away.

The above-referenced evidence illustrates the total work performed by Mrs. Hager prior to the final hearing in this case. It is this evidence that the majority has concluded constituted fraud on the issue of whether Mrs. Hager was able to maintain gainful employment.[2] The odd jobs Mrs. Hager engaged in only briefly do not establish fraud on the issue of her ability to maintain full-time employment. Generally speaking, "[f]raud has been defined as including all acts, omissions, and concealments which involve a breach of legal duty, trust or confidence justly reposed, and which are injurious to another, or by which undue and unconscientious advantage is taken of another." *Stanley v. Sewell Coal Co.,* 169 W.Va. 72, 76, 285 S.E.2d 679, 682 (1981) (citations omitted).

---

1. The parties were eventually granted a divorce based upon Mrs. Hager's counterclaim for divorce, wherein she alleged adultery against Mr. Hager. The divorce was granted on the basis of Mr. Hager's adultery.

2. There was one other incident of work by Mrs. Hager. However, this employment occurred *after* the final hearing. A few days after the final hearing in 1996, Mrs. Hager was "employed" briefly by a country club to prepare food and clean tables. Mrs. Hager was paid a total of $430.43 for this work. The majority opinion

suggests that this work occurred in 1995. However, a careful review of the record indicates differently. Mrs. Hager testified in the modification hearing that she worked briefly for the country club; but, she was unsure of the dates. She indicated it could have been 1995. However, the owner of the country club was called as a witness. He brought records which showed that Mrs. Hager was briefly employed in 1996. The owner specifically testified that he had no record or knowledge of Mrs. Hager working for him in 1995.

Mrs. Hager's failure to disclose the odd jobs she performed did not injure or take advantage of Mr. Hager. Mrs. Hager would still be entitled to alimony regardless of a timely disclosure of the evidence. Moreover, as pointed out below, the odd jobs performed by Mrs. Hager were thrust upon her because of insufficient income while the divorce was pending.

**2. The reason for the odd jobs taken by Mrs. Hager.** Mrs. Hager testified that while the divorce was pending she had no income other than SSI. She testified that, although she was not physically able to maintain full-time employment, her financial situation made it necessary for her to do what she could to try and maintain a meager living existence. Mrs. Hager's assertion of her financially destitute existence was recognized in the recommended decision of the family law master. In that order, the Family Law Master noted that Mrs. Hager had incurred a debt of $7,705.00 while the divorce was pending. This amount represented money she had to borrow money from her mother, father, daughter, son and a friend.

**3. Mrs. Hager has limited education, no work experience and is not physically able to work.** The most glaring deficiency in the majority opinion concerns Mrs. Hager's health, age and work experience.[3] The majority opinion does not mention these issues. To begin, Mrs. Hager is 55 years old. She does not have a high school diploma or GED. The record clearly established that Mrs. Hager does not have any marketable employment skills. Further, as a result of an accident and other health problems, she could not work an eight hour job even if she had marketable employment skills.[4] Mrs. Hager testified regarding her health as follows:

> A.... I had an accident in '84, the doctors kept me in bed for two and a half months on my right side. I had to learn to

walk again. I had to learn to sit again and everything.

> Q. But you recovered from that didn't you?

> A. No, not exactly. I have nerves problems, irritation.

> Q. Wasn't that injury due to a fall and wasn't that to your knee? Didn't they do a procedure on your knee?

> A. They did it on my knee and my foot and they still don't know what is wrong with my foot yet. The Chiropractor, adjusted my back and hips and everything for fifteen months.

In spite of the above evidence, the majority opinion concluded that Mrs. Hager is not entitled to alimony and can find minimum wage employment. Under this new and unprecedented standard, the majority opinion has paved the way to deny alimony to all divorced grandmothers in the State of West Virginia. Clearly this new standard is a retreat to former times when draconian barriers were erected to prevent women from obtaining alimony simply because they were women.

**4. The circuit court's decision should have been affirmed.** The circuit court heard the evidence that indicated Mrs. Hager did a few odd jobs prior to the final hearing in the case, and one odd job after the final hearing. In spite of this evidence, the circuit court did not believe the omission of the evidence during the final hearing constituted fraud in procuring alimony. In reaching this conclusion, the circuit court was able to see Mrs. Hager and observe her physical condition and demeanor. *See Michael D.C. v. Wanda L.C.,* 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record."); *Petition of Wood,* 123 W.Va. 421, 427, 15 S.E.2d 393,

---

3. This Court has previously noted that "a trial judge should look [at] ... the ages of the parties, which are important because age reflects upon their ability to work[.]" *Dyer v. Tsapis,* 162 W.Va. 289, 296, 249 S.E.2d 509, 513 (1978). Further, "our cases reflect that ... we have considered the ... health of the parties ... in determining ... alimony awards." *Molnar v. Molnar,* 173 W.Va. 200, 204, 314 S.E.2d 73, 77–78 (1984).

4. The majority opinion used as part of its justification for asserting that Mrs. Hager was employable evidence which indicated Mrs. Hager did odd work around her house. This finding is irrelevant. Mrs. Hager has not argued that she is bedridden. She testified that she can do small tasks around the home, at a slow pace.

396 (1941) ("The trial court heard the witnesses, observed their demeanor and is in a far better position to pass upon the weight and credibility of their testimony than this Court."). The circuit court concluded, based upon all the evidence, that even if Mrs. Hager should have disclosed the few odd jobs she performed, the outcome would have been the same—she would have been granted alimony. In this regard, our cases have clearly established that "[q]uestions relating to alimony . . . are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syllabus, in part, *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977). *See Banker v. Banker*, 196 W.Va. 535, 548, 474 S.E.2d 465, 478 (1996); *Carter v. Carter*, 196 W.Va. 239, 244, 470 S.E.2d 193, 198 (1996); Syl. pt. 2, *Wood v. Wood*, 190 W.Va. 445, 438 S.E.2d 788 (1993), Syl. pt. 8, *Wyant v. Wyant*, 184 W.Va. 434, 400 S.E.2d 869 (1990). There was no clear showing of abuse of discretion in this case.

Instead, the majority opinion has taken a cold record and selected certain limited facts to portray Mrs. Hager as an educated and healthy woman attempting to take advantage of her husband's income. This is an unfortunate mischaracterization of Mrs. Hager. In reality, the evidence demonstrates that Mrs. Hager has limited education, no prior work history, is middle aged, and suffers from poor health that will not permit her to stand for long periods of time. Confronted with this evidence, the majority opinion nevertheless has concluded that Mrs. Hager is capable of finding a minimum wage job and is therefore not entitled to alimony. Our cases have clearly established that "[a]bsent a finding of a statutory bar to alimony or a finding of substantial fault or misconduct on the part of the spouse seeking alimony, the determination of awarding alimony is to be based on 'the financial position of the parties.'" *Banker v. Banker*, 196 W.Va. 535, 541, 474 S.E.2d 465, 471 (1996) (quoting *Hickman v. Earnest*, 191 W.Va. 725, 726, 448 S.E.2d 156, 157 (1994)). The record in this case did not disclose any statutory bar or "substantial" fault or misconduct to prohibit alimony to Mrs. Hager.

The ultimate effect of the majority's decision is to have Mrs. Hager live in poverty, while Mr. Hager maintains the standard of living he had during his marriage. *See Molnar v. Molnar*, 173 W.Va. 200, 204, 314 S.E.2d 73, 77 (1984) (recognizing that one of the cornerstones in the equation for determining alimony is "the parties' accustomed standard of living."). The resulting resolution of this case compels me to say that the majority opinion has gone a long way in congratulating Mr. Hager for his adulterous conduct. *But see Dyer v. Tsapis*, 162 W.Va. 289, 296, 249 S.E.2d 509, 513 (1978) ("When . . . there has been inequitable conduct on the part of the husband and it appears that the wife has been comparatively blameless, the trial court is entitled to award such alimony as justice and the nature of the case demands[.]").

For the foregoing reasons, I respectfully dissent from the majority opinion.