KERMIT D. DYER

*v.*

THE HON. CALLIE TSAPIS,

*Judge, etc., et al.*

(No. 14235)

Decided November 28, 1978.

*Leonard Z. Alpert, William E. Galloway* for relator.

*Donell, DeLaMater & Hagg, Thomas D. Hagg* for respondents.

NEELY, JUSTICE:

We issued a rule to show cause in this action in prohibition to determine whether the word "fault" in *W.Va. Code*, 48-2-4(a)(7) [1977] means conduct sufficient to support a fault-based divorce or simply inequitable conduct.[1] We confine ourselves to the question whether the

---

[1] *W.Va. Code*, 48-2-4(a)(7) [1977] provides as follows:

trial court exceeded her legitimate powers when she awarded alimony to relator's wife in a divorce proceeding based upon one year's separation after finding evidence sufficient only to demonstrate "inequitable conduct" rather than evidence sufficient to warrant entitlement to a divorce on fault grounds.[2]

On February 11, 1977, relator Kermit Dyer filed an action for divorce from his wife Mary in the Circuit Court of Hancock County. The divorce, which was based on *W.Va. Code*, 48-2-4(a)(7) [1977], was awarded on December 21, 1977. On March 16, 1978, the court held a hearing on the issue of alimony. The court noted as a finding of fact that although the husband's misconduct could not be conclusively proven, the circumstances indicated a "strong suspicion of guilt" of adultery. The court found the wife's conduct to be blameless. The husband was found guilty of "inequitable conduct" and ordered to pay $150 per month alimony. The husband brought this action in prohibition on the grounds that no alimony can be awarded unless the party sought to be charged under *W.Va. Code*, 48-2-4(a)(7) [1977] has been found guilty of fault sufficient to support a fault-based divorce.

At the root of this problem is society's changing view of marriage. Many people can remember a time when

---

§ 48-2-4. Grounds for divorce.

(a) A divorce may be ordered:

(7) Where the parties have lived separate and apart in separate places of abode without any cohabitation and without interruption for one year, whether such separation was the voluntary act of one of the parties or by the mutual consent of the parties; and a plea of res adjudicata or of recrimination with respect to any other provision of this section shall not be a bar to either party's obtaining a divorce on this ground. If alimony is sought under the provisons of sections fifteen [§ 48-2-15] of this article, the court may inquire into the question of who is the party at fault and may award such alimony according to the right of the matter and such determination shall not affect the right of either party to obtain a divorce on this ground.

[2] The relator raises numerous extraneous issues in his petition which are improper matters for prohibition, although fair subjects for appeal.

divorce was rare and almost any divorce implied a social stigma. Today, however, for better or worse, divorce is more common and more socially acceptable. The law has not been insensitive to this change, as evidenced by the fact that while formerly the law of divorce, although entirely equitable, proceeded on principles similar to tort law, it has come more and more to resemble contract law, largely as a result of statutory changes.[3] Once all divorces, like all tort actions, were predicated upon a legal wrong; alimony, like tort damages, served both punitive and compensatory purposes. Now, increasingly, divorces are awarded on no-fault grounds and awards of alimony, like contract damages, increasingly emphasize restitution to the exclusion of punishment.[4] The law which once saw marriage as a sacrament now conceptualizes it as roughly analogous to a business partner-

---

[3] Most states have liberalized their divorce laws considerably in the past decade. The most common reform is a provision which allows one spouse to obtain a divorce after a set period of separation. Ark. Stat. Ann. § 34-1202(7) [1963]; Hawaii Rev. Laws § 580-41(11) [1972]; Idaho Code Ann. § 32-610 [1945]; La. Rev. Stat. Ann. § 9:301 [1960]; Md. Code Ann. art. 16, § 24 [1975]; N.C. Gen. Stat. § 50-6 [1977]; R.I. Gen. Laws Ann. § 15-5-3 [1977]; S.C. Code Ann. § 20-3-10(5)[1969]; Wash. Rev. Code Ann. § 26.08.020(9) [1973]. Even more liberal are the statutes which allow divorce for "incompatibility" or "irreconcilable differences." Ala. Code 30-2-1(a)(9) [1971]; Alaska Stat. § 09.55.110(5)(C) [1962]; Ariz. Rev. Stat. Ann. § 25-312(3) [1977]; Del. code Ann. tit. 13, § 1505(12) [1976]; Idaho Code § 32-603(8) [1971]; Nev. Rev. Stat. § 125.010(3) [1973]; N.H. Rev. Stat. Ann. § 458:7-a [1971]; N.M. Stat. Ann. § 22-7-1(A) [1973]; N.D. Cent. Code § 14-05-03 [1971]; Okla. Stat. Ann. tit. 12 § 1271(7) [1955]; Tex. Fam. Code Ann. § 3.01 [1970]. The United Kingdom has adopted an irretrievable-breakdown standard for divorce. Rosenbaum, *Divorce Reform in England: The Decline of the Matrimonial Offense*, 12 J. Fam. L. 365 (1972-73). The Uniform Marriage and Divorce Act, reprinted in 5 Fam. L.Q. 251 *et. seq.* (1971), which is a completely no-fault scheme, has been adopted by Colorado and Kentucky. Colo. Rev. Stat. § 46-1-1 *et. seq.* [1976]; Ky. Rev. Stat. Ann. § 403.130 *et. seq.* [1972].

[4] Several states have enacted purely no-fault schemes. Cal. Civ. Code § 4000 *et. seq.* [1977]; Fla. Stat. Ann. § 61.001 *et. seq.* [1971]; Iowa Code Ann. § 598.1 *et. seq.* [1972]; Mich. Stat. Ann. § 25.81 *et. seq.* [1967]; Neb. Rev. Stat. § 42-341 *et. seq.* [1971]; Or. Rev. Stat. § 107.005 *et. seq.* [1957].

ship.[5] As might be expected in the midst of such change, there is tension between the old and new approaches. On the one hand there is a powerful incentive to punish a wrongdoer and an even more powerful aversion to rewarding one. On the other hand, there is an appreciation of the value of a wife's sacrifice of the opportunity to obtain skills, advancement, and retirement benefits.[6]

---

[5] *See, e.q.*, Rheinstein, *The Transformation of Marriage and the Law*, 68 Nw. U.L. Rev. 463 (1973); Note, *The Economics of Divorce in Georgia: Toward a Partnership Theory of Marriage*, 12 Ga. L. Rev. 640 (1978).

[6] The importance of these considerations has been brought home by Judge Gardner in the case of *In re Marriage of Brantner*, 67 Cal. App. 3d 416, 419-20, 136 Cal. Rptr. 635, 637 (1977):

The new Family Law Act, and particularly Civil Code, section 4801, has been heralded as a bill of suffering under prolonged and unreasonable alimony awards. However, the act may not be used as a handy vehicle for the summary disposal of old and used wives. A woman is not a breeding cow to be nurtured during her years of fecundity, then conveniently and economically converted to cheap steaks when past her prime. If a woman is able to do so, she certainly should support herself. If, however, she has spent her productive years as a housewife and mother and has missed the opportunity to compete in the job market and improve her job skills, quite often she becomes, when divorced, simply a "displaced homemaker."

In the case at bench we are faced with a woman who, during the last 25 years, has borne 2 children and confined her activities to those of a mother and housewife. These activities, vital though they may be, do not qualify her to embark on a lucrative career in the highly competitive job market. Had she not been married those 20-odd years, she might now be well qualified as a typist, truck driver or tinsmith. Opportunities for developing skills in those fields were denied her when she, and presumably her husband, decided that she would follow that most important but somewhat nonglamorous and definitely nonsalaried occupation of housewife and mother. Assuming she does not become blind, her experience as a homemaker qualifies her for either of two positions, charwoman or babysitter. A candidate for a well paying job, she isn't.

At the time this order was made, Civil Code, section 4801, subdivision (a), provided that the court could order a party to pay for the support of the other party" ... any amount, and for such period of time, as the court may deem just and reasonable having regard for the circumstances of the respective parties, including the duration of the marriage, and the ability of the

In addition, a woman of advanced age is likely to experience difficulty in finding another suitable partner. Reluctantly, and possibly because of the difficulty of determining fault in the context of a complex interpersonal relationship, we have shifted the focus of the divorce inquiry from fault evidence to more dignified and reliable economic evidence. Nonetheless, the more modern approach must be alloyed with the more ancient.[7] It is against a backdrop of confluent policies that we must examine the question before us now.

The statute at issue here, *W.Va. Code*, 48-2-4(a)(7) [1977], is something of a hybrid inasmuch as it contains elements of both the fault and no-fault theories. By virtue of that statute the ground for divorce is simple separation, but fault is retained as the basis for an award of alimony. To require an absolute proof of fault, as we are

---

supported spouse to engage in gainful employment. . . ." All this language really does is to codify the thinking processes of innumerable trial judges throughout the years. A marriage license is not a ticket to a perpetual pension and, as women approach equality in the job market, the burden on the husband will be lessened in those cases in which, by agreement of both parties, the wife has remained employed or at least has had the opportunity to maintain and refresh her job skills during marriage. However, in those cases in which it is the decision of the parties that the woman becomes the homemaker, the marriage is of substantial duration and at separation the wife is to all intents and purposes unemployable, the husband simply has to face up to the fact that his support responsibilities are going to be of extended duration—perhaps for life. This has nothing to do with feminism, sexism, male chauvinism or any other trendy social ideology. It is ordinary commonsense, basic decency and simple justice.

[7] This is most often illustrated by courts' clinging to fault concepts despite no-fault statutes. *See, e.g., Chapman v. Chapman*, 498 S.W.2d 134 (Ky.1973) (fault not relevant to entitlement to alimony but relevant to the amount, a less than straightforward ruling); *In re Marriage of Williams*, 199 N.W.2d 339 (Iowa 1972) (dissenting opinion) (three justices felt that statutory abolition of fault divorce did not exclude adultery evidence from alimony hearing). Conversely, equitable notions sometimes appear in fault divorces. *Feldman v. Feldman*, 55 Mich. App. 147, 222 N.W.2d 2 (1974) (dictum that an isolated act of adultery in a long marriage would not cut off alimony).

asked by the relator to do, would be to deny any opportunity for the award of alimony in circumstances where a party seeks a divorce on no-fault grounds, although there may be good and sufficient reason for the separation despite the absence of "fault" in its traditional legal sense as articulated in the "fault" grounds for divorce set forth in the same statute. To exclude consideration of misconduct altogether, however, would convert this statute to a pure no-fault procedure, with an attendant inequitable redistribution of wealth. This second extreme is clearly contrary to the desire of the Legislature, which inserted the word "fault" into the statute and which has now provided a complete no-fault option in *W.Va. Code*, 48-2-4(a)(7) [1977], which relies exclusively upon a consensual procedure. We note from practice, however, that frequently one party will want a divorce, need a divorce, and have good and sufficient reason under today's standards for seeking one, but will lack any of the grounds for divorce enumerated in the fault section of the statute. As this party is usually the wife,[8] who has relied to her detriment on the permanence of the marital relationship and is consequently bereft of assets, the quandary becomes how to treat her after the marriage relationship has become unbearable. We see no reason to adopt an extreme position, particularly as we are aware that divorce cases seldom present clear-cut issues of right and wrong.

We hold, therefore, that in a divorce action based upon *W.Va. Code*, 48-2-4(a)(7) [1977], a spouse seeking alimony must show the other spouse guilty of inequitable conduct. Although inequitable conduct need not be so serious as to fall into one of the standard fault categories enumerated in *W.Va. Code*, 48-2-4(a) (1-6, 9) [1977], it must be a significant wrong supported by a preponderance of the evidence in the record. In the case before us, while the husband may or may not have committed

---

[8] We realize that there are cases where the husband is the dependent spouse and might thus be entitled to alimony, but as this situation is rare, we see no need to use linquistically awkward asexual terms.

adultery, his conduct was found to give rise to a strong suspicion of adultery. Conduct of this sort, which would lead persons in the community reasonably to believe that the husband committed adultery and, therefore, to hold the wife up to ridicule and contempt, could reasonably be considered inequitable by the trial court.

Formerly when a wife established a ground for divorce based on traditional fault she was entitled to damages keyed to her station in life. The husband, however, had reasonably definite notice of those things which he must not do in order to protect himself from this charge. What, however, we are attempting to do under the hybrid section of the statute under consideration is not to punish either party, but rather only to avoid unjust enrichment on either side. Therefore, notwithstanding the fact that a wife is blameless, if a divorce is granted on the no-fault ground of voluntary separation and alimony is predicated upon that nebulous notion of inequitable conduct, then the wife has an obligation to mitigate her damages—again an analogy from the contract side of this new confluent stream which merges tort and contract principles (which it should be emplasized again we recognize are applicable *only* by analogy as all parts of an action for divorce as obviously entirely equitable.)

Of course, there will be occasions where the wife is not capable of mitigating the damages and the court should look to all the possible factors and tailor his decree in such a way as to strike a balance among all the competing equities.[9] If the wife is young but has no occupational skills, the court might provide alimony for a predetermined, limited time to support her while she undergoes vocational training. In the same vein, if the wife is no longer young but able to work at a job which can only help contribute to her support in her customary manner,

[9] Section 308(b) of the Uniform Marriage and Divorce Act, *reprinted in* 5 Fam. L.Q. 205 (1971), sets forth six criteria: 1) financial resources of the parties, 2) the time necessary for the dependent spouse to acquire job skills, 3) the parties' accustomed standard of living, 4) the duration of the marriage, 5) the age and health of the dependent spouse, and 6) the needs of the supporting spouse.

then alimony can serve to supplement her income. Furthermore, a trial judge should look to the separate estates of the parties along with the ages of the parties, which are important because age reflects upon their ability to work; similarly, the duration of the marriage is important because duration is an index to the opportunity which the wife has foregone by being a housewife.

In short, we recognize that life-styles are changing and that different sub-groups in society expect different things from a marriage; some have a high tolerance for domestic friction, lack of romance, and inequitable conduct, while others do not. People change in their relations to one another over the years and a marriage which was once blissful can become most improvident over time. While a divorce may now be a simple way out for a spouse who is tired of a marriage, a totally blameless party can never be charged with alimony.[10] When, however, there has been inequitable conduct on the part of the husband and it appears that the wife has been comparatively blameless, the trial court is entitled to award such alimony as justice and the nature of the case demands according to the principles set forth above.

Accordingly, the writ of prohibition of which the relator prays is denied.

*Writ denied.*

---

[10] Serious misconduct by a spouse may cut off his or her right to alimony. This is consistent with the policy of fault divorces that a party guilty of fault may not receive alimony. *Beard v. Worrell,* ___ W.Va. ___, 212 S.E.2d 598 (1974); *State ex rel. Cecil v. Knapp,* 143 W.Va. 896, 105 S.E.2d 569 (1958). Courts have shown a marked reluctance to abandon consideration of conduct in alimony awards. Many courts, for example, will not require a wrongdoer to pay more alimony because of his wrong, but will deny alimony to a wrongdoer. *See, e.g., Mahne v. Mahne,* 147 N.J. Super. 326, 371 A.2d 314 (1977).