314 S.E.2d 73

**Barney Alex MOLNAR**

v.

**Mary Joan MOLNAR.**

**No. 15925.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 11, 1984.

Decided March 2, 1984.

Charles M. Kincaid, Kirk L. Frankel, Frankel & Kincaid, Huntington, for appellant.

Lafe Chafin, Barrett, Chafin, Lowry & Hampton, Huntington, for appellee.

MILLER, Justice:

Mary Joan Molnar appeals from a final divorce decree of the Circuit Court of Cabell County contending that the court abused its discretion in awarding diminished or rehabilitative alimony. The circuit court awarded $750 a month alimony for five years, $250 a month for two years, and $1 a month thereafter.

The Molnars were married on April 7, 1957, in Perry County, Ohio, and subsequently moved to Huntington, West Virginia. During the twenty-five years of their married life, they raised three children, all of whom are now over eighteen years of age. When this case came to trial, Mrs. Molnar was fifty-three years of age and was living in the marital residence with two of her children.

She worked as an application processor for Appalachian Life Insurance Company and earned a net monthly pay of $438. At trial, she asserted that her monthly expenses, including mortgage payments on the family home, totaled $1,569.80. Her husband, who worked as a general sales manager at a baking company, made $45,600 a year, and had a take-home pay of $2,520 a month. At trial, he claimed that his monthly expenses totaled $961 a month.

Mrs. Molnar testified that she had attempted to find a better paying job, but potential employers showed little interest in her because of her limited skills and advanced age. As a means of increasing her earning power, she had investigated the possibility of obtaining a degree in computer science from Marshall University. Given the fact that she had to work full time, she concluded that the heaviest academic load she could carry would be six hours a semester. At that rate, she would be able to complete the 128½ hour program offered by the university in 10½ years. No evidence was produced at trial concerning her likely earnings as a computer programmer, or whether she would even be able to obtain work in that field at the age of sixty-three.

After hearing both parties, the trial judge made brief oral findings of fact and awarded a divorce based upon irreconcilable differences.[1] The final order, in addition to the award of rehabilitative alimony, gave Mrs. Molnar permanent and exclusive possession of "the furniture, furnishings and appliances located in the parties' marital residence." The record does not disclose the disposition of the marital residence except that there had been some discussion as to selling it. It is jointly owned and is valued at $125,000, with a $36,000 mortgage. Mrs. Molnar contends that limiting the award of alimony to seven years was "unjust and inequitable" in light of her financial needs, advancing age and limited earning power.

### I.

██ We have not had occasion to discuss the concept of "rehabilitative alimony," which generally connotes an attempt to encourage a dependent spouse to become self-supporting by providing alimony for a limited period of time during which gainful employment can be obtained.[2] It rests upon the premise that by encouraging the party to become self-reliant, this may alleviate some of the financial problems attendant to a divorce, as well as providing a sense of independence and psychological fulfillment.[3]

---

1. The trial judge stated:

"I would find from the evidence and the pleadings that irreconcilable differences have arisen and continue to exist between the parties to the marriage. I would therefore dissolve the marriage and award a divorce. I would determine further from the evidence that [Mrs. Molnar] is entitled to some alimony and some assistance in and about her plans for her education. And therefore, I would fix her alimony at $750.00 a month for a period of five years, $250.00 a month for a period of two years thereafter, and a dollar a month thereafter."

2. *See generally* Gillman, *Alimony/Spousal Support: From Punishment to Rehabilitation,* 7 Community Prop.J. 135 (1980); Comment, *Rehabilitative Spousal Support: In Need of a More Comprehensive Approach to Mitigating Dissolution Trauma,* 12 U.San Fran.L.Rev. 493 (1978); Annot., 97 A.L.R.3d 740 (1980); 24 Am.Jur.2d *Divorce and Separation* §§ 746–48 (1983).

3. However, we agree with this cautionary statement sounded in *In Re Marriage of Morrison,* 20

Rehabilitative alimony has been utilized frequently where a younger dependent spouse entered marriage with marketable skills, which then deteriorated through non-use, or the dependent spouse evidenced a capability for self-support, which could be developed through training or academic study. In these circumstances, an award of alimony for a limited period of time is provided to give such spouse an opportunity to rehabilitate old skills or acquire new ones.

A number of jurisdictions by statute now allow trial courts to award rehabilitative alimony by permitting them to consider the employment potential of a dependent spouse, along with other factors such as the financial resources of the parties.[4]

The same result has been reached by courts that have permitted rehabilitative alimony under general statutes similar to W.Va.Code, 48-2-15 & 16, which confer broad discretion upon courts in granting alimony.[5] *See Bussell v. Bussell*, 623 P.2d 1221, 1224 (Alaska 1981); *Johnson v. Steel, Inc.*, 94 Nev. 483, 486, 581 P.2d 860, 862 (1978); *Lepis v. Lepis*, 83 N.J. 139, 155 n.9, 416 A.2d 45, 53 n.9 (1980); *Turner v. Turner*, 158 N.J.Super. 313, 385 A.2d 1280 (Ch. Div.1978); *Warren v. Warren*, 655 P.2d 684, 685, 688 (Utah 1982); *Endres v. Endres*, 62 Wash.2d 55, 380 P.2d 873 (1963).

Cal.3d 437, 452, 573 P.2d 41, 51, 143 Cal.Rptr. 139, 149 (1978):

"Limiting the duration of support so that both parties can develop their own lives, free from obligations to each other, is a commendable goal. However, if courts were to award support with a set termination date simply for this reason and without any evidence as to the ability of the supported spouse to support himself or herself, great injustices could result. Although increasing numbers of married women today are employed, many others have devoted their time, with their spouse's approval, to maintaining the home and raising the children, leaving them no time for employment outside the home. This willingness of the wife to remain at home limits her ability to develop a career of her own. If the marriage is later dissolved, the wife may be unable, despite her greatest efforts, to enter the job market."

In several earlier opinions, we have indicated that rehabilitative alimony could be awarded without, however, utilizing the name or extensively discussing its principles. In *Dyer v. Tsapis*, 162 W.Va. 289, 249 S.E.2d 509, 513 (1978), which involved a divorce based upon voluntary separation, we said:

"If the wife is young but has no occupational skills, the court might provide alimony for a predetermined, limited time to support her while she undergoes vocational training. In the same vein, if the wife is no longer young but able to work at a job which can only help contribute to her support in her customary manner, then alimony can serve to supplement her income. Furthermore, a trial judge should look to the separate estates of the parties along with the ages of the parties, which are important because age reflects upon their ability to work; similarly, the duration of the marriage is important because duration is an index to the opportunity which the wife has foregone by being a housewife."

This language was also quoted in *Haynes v. Haynes*, 164 W.Va. 426, 264 S.E.2d 474, 475–76 (1980), in which we discussed the award of alimony in cases where divorce is granted on the basis of irreconcilable differences. *See also Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977); *Corbin v. Corbin*, 157 W.Va. 967, 206 S.E.2d 898 (1974).

**4.** *See, e.g.,* Ariz.Rev.Stat.Ann. § 25–319 (1976); Cal.Civ.Code § 4801 (West Supp.1984); Colo. Rev.Stat. § 14–10–114 (Supp.1982); Conn.Gen. Stat.Ann. § 46b–82 (West Supp.1982); Del.Code Ann. tit. 13, § 1512(c) (1981); Fla.Stat.Ann. § 61.08 (West 1982); Hawaii Rev.Stat. § 580–47 (Supp.1982); Idaho Code § 32–705 (Supp.1983); Ill.Ann.Stat., ch. 40, § 504 (Smith-Hurd Supp. 1982); Iowa Code Ann. § 598.21(3) (West 1981 & Supp.1982); Ky.Rev.Stat. § 403.200 (Supp. 1982); Md.Ann.Code art. 16, § 1 (1981); Mont. Code Ann. § 40–4–203 (1983); Or.Rev.Stat. § 107.105(1)(c) (1981); *see also* Unif. Marriage and Divorce Act § 308, 9A U.L.A. 307 (1979).

**5.** "Upon ordering a divorce, the court may make such further order as it shall deem expedient concerning the maintenance of the parties." W.Va.Code, 48-2-15. W.Va.Code, 48-2-16, lists several pecuniary factors and concludes with the phrase that alimony should be allowed "in accordance with the principles of justice."

Those courts which have upheld awards of rehabilitative alimony under general alimony statutes like ours conclude that such statutes confer broad powers to fashion awards of alimony. They reason that unless the statute specifically prohibits rehabilitative alimony, its broadness encompasses the right to award such alimony. We agree with this reasoning and as previously noted have indicated in prior cases that such an award might be made. We, therefore, conclude that a circuit court does have authority to award rehabilitative alimony in an appropriate case.

### II.

In determining whether to award rehabilitative alimony, we believe that a key ingredient must be a realistic assessment of the dependent spouse's potential work skills and the availability of a relevant job market. We stressed the age and health factors in *Dyer*, not only because they reflect the ability to work but because they become an important factor in job availability. Many employers are reluctant to hire an older person because of potential exposure to increased health and pension costs. Furthermore, the cost of training an older employee cannot be amortized over as many years as with a younger person.

In both *Dyer* and *Haynes*, we summarized these six criteria relating to the setting of alimony from Section 308(b) of the Uniform Marriage and Divorce Act, *reprinted* in 5 Fam.L.Q. 205 (1971): (1) the financial resources of the parties, (2) the time necessary for the dependent spouse to acquire job skills, (3) the parties' accustomed standard of living, (4) the duration of the marriage, (5) the age and health of the dependent spouse, and (6) the needs of the supporting spouse.[6]

These factors are somewhat analogous to those contained in W.Va.Code, 48–2–16.[7] Furthermore, our cases reflect that in addition to statutory criteria, we have considered the age and health of the parties, their standard of living, and the duration of the marriage in determining the amount of alimony awards. *See Yanero v. Yanero,* 171 W.Va. 88, 297 S.E.2d 863 (1982); *Purnell v. Purnell,* 167 W.Va. 715, 280 S.E.2d 281 (1981); *Haynes v. Haynes, supra; Zinn v. Zinn,* 164 W.Va. 142, 260 S.E.2d 844 (1979); *Dyer v. Tsapis, supra; Corbin v. Corbin, supra; Reynolds v. Reynolds,* 72 W.Va. 349, 78 S.E. 360 (1913); *Henrie v. Henrie,* 71 W.Va. 131, 76 S.E. 837 (1912). Finally, we believe some recognition must be given with regard to rehabilitative alimony as to whether there are minor children who are living with the dependent spouse. *Oppenheimer v. Oppenheimer,* 22 Ariz.App. 238, 242, 526 P.2d 762, 766 (1974); *McNaughton v. McNaugh-*

---

**6.** The actual language of Section 308(b) of the Uniform Marriage and Divorce Act, 5 Family L.Q. at 233, is:

"The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, and after considering all relevant factors including:

"(1) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

"(2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

"(3) the standard of living established during the marriage;

"(4) the duration of the marriage;

"(5) the age, and the physical and emotional condition of the spouse seeking maintenance; and

"(6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance."

**7.** W.Va.Code, 48–2–16, provides:

"All judges and courts of this State, called upon to fix, ascertain and determine an amount as alimony, support or maintenance to be paid by a spouse or to modify any order pertaining thereto, shall take into consideration, among other things, the financial needs of the parties, the earnings and earning ability of the husband and wife, the estate, real and personal, and the extent thereof as well as the income derived therefrom of both the husband and wife and shall allow, or deny, alimony or maintenance or modify any former order with relation thereto, in accordance with the principles of justice."

*ton*, 332 So.2d 673, 675 (Fla.App.1976), *cert. denied*, 345 So.2d 424 (Fla.1977); *In Re Marriage of Dowie*, 215 N.W.2d 276 (Iowa 1974); *Johnson v. Steel, Inc.*, 94 Nev. 483, 487, 581 P.2d 860, 863 (1978).

In both *Dyer* and *Haynes*, we mentioned the time necessary for the dependent spouse to acquire job skills. Obviously, rehabilitative alimony should not terminate before the dependent spouse can reasonably be expected to acquire the necessary job skills. Consideration must also be given to the cost of retraining the dependent spouse, which is in addition to the general award of alimony.

A final factor in regard to an award of rehabilitative alimony is the continuing jurisdiction of the court to modify an award of rehabilitative alimony in the event that the dependent spouse is unable to meet the terms of the rehabilitative plan. This is ordinarily left to the sound discretion of the trial court. It is generally held, however, in the case of an older dependent spouse, who has had a lengthy marriage, that the court should retain continuing jurisdiction unless the record is clear that the dependent spouse will be able to be financially self-supporting at the end of the rehabilitative alimony period. *E.g., Oppenheimer v. Oppenheimer, supra; In Re Marriage of Morrison*, 20 Cal.3d 437, 573 P.2d 41, 143 Cal.Rptr. 139 (1978); *cf. Hunt v. Hunt*, 394 So.2d 564, 566 (Fla.App.1981).

Thus, to summarize, there are three broad inquiries that need to be considered in regard to rehabilitative alimony: (1) whether in view of the length of the marriage and the age, health, and skills of the dependent spouse, it should be granted; (2) if it is feasible, then the amount and duration of rehabilitative alimony must be determined; and (3) consideration should be given to continuing jurisdiction to reconsider the amount and duration of rehabilitative alimony.

### III.

Under the facts of the present case, we believe that the trial court abused its discretion in initially awarding rehabilitative alimony. There were insufficient facts in the record [8] demonstrating that even if Mrs. Molnar were able to earn a computer science degree, she would find work at her age as a computer programmer. With her full-time job at Appalachian Life Insurance Company, she could only attend college on a part-time basis. This meant that she might be attending college for as long as ten years and would be sixty-three when she received her degree.

Furthermore, the record gives no indication as to whether Mrs. Molnar could in view of her long absence from academic pursuits realistically achieve a college degree in computer science.[9] Certainly some evidence in this area is necessary where there is an older dependent spouse who has no previous academic training in the selected field and has been away from school for a considerable period of time.

Finally, we question whether in this type of case, with an older dependent spouse who has a full-time job that appears commensurate with his or her educational background and skills, further "rehabilitative" requirements should be considered.[10] In situations such as this, a circuit court should consider an alimony award based upon the traditional factors outlined in our prior cases and summarized herein, in order to supplement the dependent spouse's income.

For the foregoing reasons, the judgment of the Circuit Court of Cabell County is reversed and the case is remanded.

Reversed and Remanded.

---

8. In cases where rehabilitative alimony is found to be proper, it is important that sufficient findings of fact be made by the circuit court that would explain the basis for the rehabilitative alimony award. Rule 52 of the Rules of Civil Procedure requires such findings of fact. *See Bills v. Bills*, 170 W.Va. 707, 296 S.E.2d 348 (1982).

9. Mrs. Molnar testified that she had a high school education.

10. Mrs. Molnar in the earlier years of her marriage worked as a bookkeeper and typist for a lumber company. She had also worked part time as a sales clerk at a department store.