483 S.E.2d 861

**Patricia Carol BOSWORTH, Plaintiff Below, Appellant,**

v.

**Charles M. BOSWORTH, Defendant Below, Appellee.**

No. 23792.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 15, 1997.

Decided March 14, 1997.

that order, the circuit court overturned the recommendation of the family law master that the appellant, Patricia Carol Bosworth, pay rehabilitative alimony to the appellee, Charles M. Bosworth, for a period of twelve months following the parties' divorce. As the final order reflects, the circuit court granted the divorce but, instead, directed the appellant to pay permanent alimony to the appellee.

This Court has before it the petition for appeal, all matters of record and the briefs of counsel. As discussed below, this Court is of the opinion that the circuit court failed to articulate sufficient reasons for not following the family law master's recommendation concerning alimony. Accordingly, the final order is reversed, and this action is remanded to the circuit court for the entry of an order adopting the family law master's recommendation.

I

The parties were married in April 1983, and one child, a son, was born of the marriage. As indicated by the family law master, the child has a learning disability which has resulted in a variety of special needs with regard to his care and education. It should be noted, however, that no issues concerning the custody of the child, which has consistently remained with the appellant, or the amount of child support payable by the appellee, have been raised in this appeal.

The parties separated in May 1994, and this action was instituted in the circuit court upon the ground of irreconcilable differences. *W. Va.Code*, 48–2–4(a)(10) [1981]. Thereafter, on February 8, 1995, an evidentiary hearing was conducted by the family law master, resulting in a recommended order of the family law master dated June 29, 1995.

Elizabeth A. Pyles, Pyles & Auvil, Parkersburg, for Appellant.

Robert S. Fluharty, Jr., Fluharty & Townsend, Parkersburg, for Appellee.

PER CURIAM:

This action is before this Court upon an appeal from the final order of the Circuit Court of Wood County, West Virginia, entered on September 12, 1995. Pursuant to

As reflected in the recommended order, the family law master found, *inter alia,* that the parties were married on April 15, 1983, had separated in May of 1994 and had agreed that the appellant would have custody of their son. With regard to the latter finding, the family law master determined that the appellee should pay $208.26 per month for child support and, in addition, provide medi-

cal insurance coverage for the child. The family law master also found that the parties had completed an equitable distribution of the marital property.

With regard to the question of alimony, the family law master found that the appellant was 43 years old, possessed a Master of Arts degree and was employed as a licensed counselor. The appellee, on the other hand, was found to be 44 years old and a high school graduate with approximately two years of college credits. Significantly, as the family law master's recommended order and the record indicate, the appellee was employed throughout the marriage. Specifically, the appellee worked for Heck's Department Store until December 1990. His subsequent employers included Big Bear, Superior Toyota and Wal–Mart. The family law master considered the monthly expenses of both parties and noted that the appellant had an annual income of approximately $30,700 and that the appellee had an annual income of approximately $14,600. Both parties were found to be in good health.

Based upon the above findings of fact, and upon the statutory considerations with regard to alimony set forth in *W. Va.Code*, 48–2–16(b) [1984],[1] the family law master recommended that the appellee be awarded reha-

bilitative alimony. In particular, the family law master recommended that the appellant pay the appellee $500 per month, "[c]ommencing on the first day of the first month following the entry of an Order divorcing the parties and continuing ... thereafter for a term and period of twelve months [.]"

The appellee challenged the recommended order, however, asserting that he was entitled to permanent, rather than rehabilitative, alimony. The circuit court agreed and in a letter dated August 4, 1995, indicated that there was no finding in the recommended order "which would properly allow the law master to conclude that the alimony award should be limited to any specific time or as to purpose." That letter was followed by the entry of the final order of September 12, 1995, which stated:

Commencing on the 1st day of the first month following the entry of this Order divorcing the parties and continuing on the 1st day of each month thereafter during the joint lives of the parties or until such time as the [appellee] dies or remarries, the [appellant] shall pay to the [appellee] as permanent alimony the sum of Five Hundred and 00/000 ($500.00) Dollars per month.

---

**1.** According to *W. Va.Code*, 48–2–16(b) [1984], a circuit court shall consider the following factors in determining the amount of alimony, child support or separate maintenance, if any, to be ordered in a domestic relations case.

(1) The length of time the parties were married;

(2) The period of time during the marriage when the parties actually lived together as husband and wife;

(3) The present employment income and other recurring earnings of each party from any source;

(4) The income-earning abilities of each of the parties, based upon such factors as educational background, training, employment skills, work experience, length of absence from the job market and custodial responsibilities for children;

(5) The distribution of marital property to be made under the terms of a separation agreement or by the court under the provisions of section thirty-two of this article, insofar as the distribution affects or will affect the earnings of the parties and their ability to pay or their need to receive alimony, child support or separate maintenance;

(6) The ages and the physical, mental and emotional condition of each party;

(7) The educational qualifications of each party;

(8) The likelihood that the party seeking alimony, child support or separate maintenance can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training;

(9) The anticipated expense of obtaining the education and training described in subdivision (8) above;

(10) The costs of educating minor children;

(11) The costs of providing health care for each of the parties and their minor children;

(12) The tax consequences to each party;

(13) The extent to which it would be inappropriate for a party, because said party will be the custodian of a minor child or children, to seek employment outside the home;

(14) The financial need of each party;

(15) The legal obligations of each party to support himself or herself and to support any other person; and

(16) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of alimony, child support or separate maintenance.

Importantly, other than the above statement concerning alimony contained in the letter of August 4, 1995, the circuit court expressed no reasons for not following the recommended order of the family law master. In particular, the final order of the circuit court did not set forth any findings or conclusions as to why the alimony should be permanent, rather than rehabilitative. In all other respects, the recommendations of the family law master, concerning custody, child support, *etc.*, were adopted.

## II

■ This Court has often observed that a recommended order of a family law master is reviewable by a circuit court pursuant to statute, *W. Va.Code*, 48A–4–16 [1993], *W.Va. Code*, 48A–4–20 [1996], and pursuant to this Court's *Rules of Practice and Procedure for Family Law.* As we stated in syllabus point 1 of *Stephen L.H. v. Sherry L.H.*, 195 W.Va. 384, 465 S.E.2d 841 (1995): "A circuit court should review findings of fact made by a family law master only under a clearly erroneous standard, and it should review the application of law to the facts under an abuse of discretion standard." *See also* syl. pt. 1, *Banker v. Banker*, 196 W.Va. 535, 474 S.E.2d 465 (1996). With regard to findings of fact, this Court noted in syllabus point 3 of *Stephen L.H.*: "Under the clearly erroneous standard, if the findings of fact and the inferences drawn by a family law master are supported by substantial evidence, such findings and inferences may not be overturned even if a circuit court may be inclined to make different findings or draw contrary inferences." *See also Alireza D. v. Kim Elaine W.*, 198 W.Va. 178, 479 S.E.2d 688 (1996). Of course, the final order of a circuit court in such cases is reviewable by this Court. *Magaha v. Magaha*, 196 W.Va. 187, 190, 469 S.E.2d 123, 126 (1996); *Hinerman v. Hinerman*, 194 W.Va. 256, 259, 460 S.E.2d 71, 74 (1995); *Marilyn H. v. Roger Lee H.*, 193 W.Va. 201, 204, 455 S.E.2d 570, 573 (1995).

Specifically, the ability of a circuit court to overturn the recommendations of a family law master is limited by statute. As stated in *W. Va.Code*, 48A–4–20(c) [1993]:

The circuit court shall examine the recommended order of the master, along with the findings and conclusions of the master, and may enter the recommended order, may recommit the case, with instructions, for further hearing before the master or may, in its discretion, enter an order upon different terms, as the ends of justice may require. The circuit court shall not follow the recommendation, findings and conclusions of a master found to be:

(1) Arbitrary, capricious, an abuse of discretion or otherwise not in conformance with the law;.

(2) Contrary to constitutional right, power, privilege or immunity;

(3) In excess of statutory jurisdiction, authority or limitations or short of statutory right;

(4) Without observance of procedure required by law;

(5) Unsupported by substantial evidence; or

(6) Unwarranted by the facts.

■ Considering a prior version of *W. Va.Code*, 48A–4–20 [1993], which contained identical language in subsection (c) thereof, this Court held in *Higginbotham v. Higginbotham*, 189 W.Va. 519, 432 S.E.2d 789 (1993), in syllabus point 1:

W.Va.Code, 48A–4–10(c) (1990), limits a circuit judge's ability to overturn a family law master's findings and conclusions unless they fall within one of the six enumerated statutory criteria contained in this section. Moreover, Rule 52(a) of the West Virginia Rules of Civil Procedure requires a circuit court which changes a family law master's recommendation to make known its factual findings and conclusions of law.[2]

(footnote added). *See also Banker, supra*, 196 W.Va. at 542, 474 S.E.2d at 472; syl. pt. 2, *Donohew v. Donohew*, 193 W.Va. 184, 455

---

**2.** *W. Va. R. Civ. P.* 52(a) provides, in part, that "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of appropriate judgment [.]"

S.E.2d 553 (1995); syl. pt. 2, *Odle v. Eastman,* 192 W.Va. 615, 453 S.E.2d 598 (1994).

In this action, the $500 amount of alimony has not been questioned. Rather, the appellant contends that the family law master properly recommended that rehabilitative alimony, at the $500 per month level, rather than permanent alimony, was warranted. Moreover, the appellant contends that the circuit court failed to articulate sufficient reasons or findings for not following that recommendation. In particular, the appellant contends that based upon the appellee's education and work experience, and because he was never out of the work force for any significant period of time during the marriage, rehabilitative alimony was appropriate. In that regard, the appellant emphasizes the fact that the appellee has never had the responsibility of continuing custody of the parties' son. The appellee, on the other hand, contends that at his current age, and in view of his employment history in terms of income, he is entitled to permanent alimony.

■ In the leading case of *Molnar v. Molnar,* 173 W.Va. 200, 314 S.E.2d 73 (1984), this Court endeavored to make clear the principles of rehabilitative alimony. In syllabus point 1 *Molnar* we observed that rehabilitative alimony "generally connotes an attempt to encourage a dependent spouse to become self-supporting by providing alimony for a limited period of time during which gainful employment can be obtained." Specifically, syllabus point 3 of *Molnar* holds:

> There are three broad inquiries that need to be considered in regard to rehabilitative alimony: (1) whether in view of the length of the marriage and the age, health, and skills of the dependent spouse, it should be granted; (2) if it is feasible, then the amount and duration of rehabilitative alimony must be determined; and (3) consideration should be given to continuing jurisdiction to reconsider the amount and duration of rehabilitative alimony.

*See also* syl. pt. 2, *Magaha, supra;* syl. pt. 2, 469 S.E.2d 123, *McVay v. McVay,* 189 W.Va. 197, 429 S.E.2d 239 (1993); syl. pt. 4, *Miller v. Miller,* 189 W.Va. 126, 428 S.E.2d 547 (1993); syl. pt. 1, *Kapfer v. Kapfer,* 187 W.Va. 396, 419 S.E.2d 464 (1992); 95 W.Va.

L.Rev. 469 (1992–93); *Annot.,* 97 A.L.R.3d 740 (1980).

In *Molnar,* the parties were divorced after twenty-five years of marriage, and although the wife, 53 years old, had been employed during the marriage, her income was small compared to that of her husband. The wife was awarded rehabilitative alimony by the circuit court. However, discussing the length of the marriage and the wife's age and limited opportunities in the job market, this Court, in *Molnar,* remanded the case to the circuit court for a reconsideration of the alimony issue.

■ Here, in contrast to the circumstances in *Molnar,* the appellee is considerably younger and was married to the appellant for approximately twelve years, rather than twenty-five years. In any event, the record before this Court fails to suggest that the marriage had any impact upon either of the parties' opportunities in the job market. The family law master herein, in making the recommendation, considered a number of factors including the appellee's age, health, education, employment history, current income and expenses. Underlying those considerations, in part, were the facts that the appellee's education included approximately two years of college credits and that the appellee had been employed throughout the marriage. As the family law master found, the appellee had been employed by Heck's Department Store, Big Bear, Superior Toyota and Wal-Mart. Manifestly, the petition for appeal is accurate in its assertion that "[i]t is clear that the family law master properly considered the criteria contained in West Virginia Code § 48–2–16 when she recommended that [the appellee] receive rehabilitative alimony." *See* n. 1, *supra.*

Furthermore, the appellant is correct in asserting that the circuit court failed to articulate sufficient reasons for not following the family law master's recommendation concerning alimony. As stated above, the final order of the circuit court did not set forth any findings or conclusions as to why the alimony payable to the appellee should be permanent, rather than rehabilitative. Moreover, in view of the detailed consider-

ations of the family law master, discussed above, the attenuated statement contained in the letter of August 4, 1995, to the effect that the family law master's findings were insufficient, fails to satisfy the kind of analysis required by this Court in *Higginbotham, supra.*

Upon all of the above, therefore, and particularly in view of the record developed before the family law master, the final order of the Circuit Court of Wood County, entered on September 12, 1995, is reversed, and this action is remanded to that court for the entry of an order adopting the family law master's recommendation concerning rehabilitative alimony.

Reversed and remanded.