496 S.E.2d 237

**Thomas Clark FRAME, Plaintiff Below, Appellee,**

v.

**Kathleen Marie (Metheney) FRAME, Defendant Below, Appellant.**

No. 24037.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 14, 1997.

Decided Nov. 20, 1997.

**288**

Cheryl A. McCray, Morgantown, for Appellant.

Wesley W. Metheney, Wilson, Frame, Benninger & Metheney, Morgantown, for Appellee.

### PER CURIAM: [1]

■ This is an appeal from a final divorce decree entered by the Circuit Court of Monongalia County. In this appeal the appellant/defendant, Kathleen Marie Frame, argues that the circuit court committed error in its determination regarding rehabilitative alimony and in ordering the sale of the marital home.

### I.

Kathleen Marie (Metheney) Frame and Thomas Clark Frame, appellee/plaintiff, were married for nine and a half years.[2] The parties originally resided in Washington, D.C., but moved to West Virginia in order to further the career of Mr. Frame. During the marriage, Ms. Frame was employed as a housing manager by West Virginia University.[3] Mr. Frame was employed as an investment broker. At the time of the divorce Ms. Frame was earning approximately $21,000.00 per year. However, she testified, and the parties do not dispute that Ms. Frame's job was being terminated as a result of job force reductions at West Virginia University. Instead of accepting different employment[4] with West Virginia University, Ms. Frame continued her preparations to begin law school at West Virginia University College of Law.[5]

---

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992) *("Per curiam* opinions ... are used to decide only the specific case before the Court; everything in a *per curiam* opinion beyond the syllabus point is merely obiter dicta.... Other courts, such as many of the United States Circuit Courts of Appeals, have gone to non-published (not-to-be-cited) opinions to deal with similar cases. We do not have such a specific practice, but instead use published *per curiam* opinions. However, if rules of law or accepted ways of doing things are to be changed, then this Court will do so in a signed opinion, not a *per curiam* opinion.").

2. One child was born from the marriage. The child was six years old at the time of the divorce.

3. The record indicates that Ms. Frame's income was reduced by approximately one-half as a result of relocating to West Virginia with her husband. In contrast, Mr. Frame's income dramatically increased when the couple moved to West Virginia. At the time of the divorce Mr. Frame's gross annual income was $54,000.

4. Ms. Frame had an opportunity to remain employed with West Virginia University in another capacity. The record is silent regarding her salary in the new position.

5. The record reflects that approximately ten (10) months prior to Mr. Frame filing for divorce, Ms. Frame had begun preparations for attending law school. She had taken the Law School Application Test (LSAT) and had submitted her applica-

The Family Law Master calculated rehabilitative alimony based, in part, upon Ms. Frame's past annual gross wages.[6] The circuit court adopted the finding. Ms. Frame contends on appeal that rehabilitative alimony was calculated incorrectly. The Family Law Master further determined that the marital home should be sold to pay off a $30,000 loan to Mr. Frame's parents.[7] The circuit court also adopted this finding and recommendation. Ms. Frame asserts that the marital home should not have been ordered sold.

## II.

In reviewing challenges to a circuit court's final divorce decree a three-pronged standard of review is applied. The final equitable distribution order is reviewed under an abuse of discretion standard; factual findings are reviewed under a clearly erroneous standard; and questions of law are subject to a de novo review. Syl. Pt. 1, *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995). In the instant proceeding it was error to calculate rehabilitative alimony based upon Ms. Frame's nonexistent wages. On remand, rehabilitative alimony is to be calculated based upon Mr. and Ms. Frame's actual income at the time of the remand hearing. *See Molnar v. Molnar*, 173 W.Va. 200, 314 S.E.2d 73 (1984). As to the marital home, it was clearly error to order that it be sold. There was no evidence of any third party asserting any interest in the home due to a marital debt. We succinctly held in syllabus point 5 of *Boyle v. Boyle*, 194 W.Va. 124, 459 S.E.2d 401(1995) that: "The paramount goal of a divorce proceeding is a just and equitable resolution of the interests and rights of the divorcing spouses. The interests of third parties in marital property are best resolved in legal actions separate and

apart from the divorce proceeding." *See Wyant v. Wyant*, 184 W.Va. 434, 400 S.E.2d 869 (1990). On remand the marital home is to be temporarily awarded to Ms. Frame as an incident of child support.[8]

Reversed and Remanded.

---

tion for admission to the West Virginia University College of Law.

**6.** Ms. Frame's past annual income from West Virginia University was $21,000. She was awarded rehabilitative alimony in the amount of $100 per month for three years. The duration of the award was based upon the time it generally takes to complete law school.

**7.** The loan was in the form of a demand note. There was no evidence to suggest that the note would be called within the near future.

**8.** *See* Syl. Pt. 2, *McKinney v. McKinney*, 175 W.Va. 640, 337 S.E.2d 9 (1985) ("Except in extraordinary cases, the right to the exclusive use and occupancy of the marital home terminates when such use and occupancy is no longer necessary to accommodate the rearing of minor children. W.Va.Code 48–2–15(b)(4) [1996].").