511 S.E.2d 865

**Robert Nathan SANNEY, Plaintiff Below, Appellee,**

v.

**Karen Diane SANNEY, Defendant Below, Appellant.**

No. 25197.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 12, 1998.

Decided Dec. 14, 1998.

Peter A. Hendricks, Madison, West Virginia, Attorney for Appellant.

Thomas E. Esposito, Esposito & Esposito, Logan, West Virginia, Attorney for Appellee.

PER CURIAM:

Karen Diane Sanney, the appellant in this divorce proceeding, claims that the Circuit Court of Boone County erred in ordering the sale of the parties' marital residence rather than allowing her to reside in it until the parties' children reach the age of majority. She also claims that the court erred in awarding her rehabilitative alimony and that the court improperly calculated the amount of child support to which she was entitled. Lastly, she asserts that the court committed certain errors in ordering the distribution of the parties' marital property and in denying her prospective attorney fees and costs.

## FACTUAL BACKGROUND

Ms. Sanney and her husband, Robert Nathan Sanney, were married on December 18, 1981. Mr. Sanney is an engineer employed by American Electric Power Company. At the time relevant to these proceedings, Mr. Sanney had an annual income of $63,744.00, and received stock options and various other fringe benefits. Ms. Sanney has a high school education. Prior to the birth of the parties' first child, Ms. Sanney worked as a bankteller. After the birth of their first child, Ms. Sanney remained at home and performed the services of a homemaker.

On or about October 15, 1994, after almost thirteen years of marriage, the parties separated. Mr. Sanney filed for divorce on the ground of irreconcilable differences. The matter was subsequently referred to a family law master who concluded that irreconcilable differences did exist and that there were adequate grounds for a divorce. The family law master also issued a recommended order resolving various issues arising out of the divorce. That order was subsequently adopted by the judge of the circuit court. Among other things, the order directed that the parties' marital residence be listed for sale and that the proceeds be equally divided. The order also awarded Ms. Sanney custody of the parties' two teenage daughters and directed that Mr. Sanney pay $844.52 per month to Ms. Sanney in child support. Ms. Sanney was awarded $200.00 per month in rehabilitative alimony for two years. Lastly, the order required a distribution of the parties' marital property. It is from that order that Ms. Sanney appeals.

## DISCUSSION

Ms. Sanney claims that the circuit court erred in ordering that the parties' marital home be listed for sale and that the proceeds be divided. Ms. Sanney implicitly argues that she has infant children to raise and that she should have been awarded the exclusive use and occupancy of the marital home so that she can provide a suitable environment for her children. Ms. Sanney argues that W.Va.Code § 48–2–15(b)(5), authorizes such

an award. That statute provides, in relevant part:

> The court may grant the exclusive use and occupancy of the marital home to one of the parties, together with all or a portion of the household goods, furniture and furnishings reasonably necessary for such use and occupancy. Such use and occupancy shall be for a definite period, ending at a specific time set forth in the order, subject to modification upon the petition of either party. Except in extraordinary cases supported by specific findings set forth in the order granting relief, a grant of the exclusive use and occupancy of the marital home shall be limited to those situations when such use and occupancy is reasonably necessary to accommodate the rearing of minor children of the parties.

The trial court determined that it was inappropriate to award Ms. Sanney exclusive possession of the marital home because the structure had been inadvertently built in a flood plane and because the cost of maintaining insurance on it was inordinately high. The court's order said:

> [T]he sticking point of this case revolves around the former marital residence. Because of the problem with the flood zone, which the parties were not aware of when they built the home, it will be difficult, if not impossible, for them to sell this home, simply because lenders will be very wary of this situation. For that reason, what could have been a fairly simple divorce action is quite complicated. Mr. Sanney needs, due to job requirements, to reside in this area, and he maintains that he cannot afford to purchase his wife's interest in this home. He also cannot afford to purchase another home while still obligated for this home. However, the sale of this home may cause the parties to lose money. The house is relatively new, having been built around in 1992, so the parties do not have much equity built up in the home at this point.

■ In *Murredu v. Murredu,* 160 W.Va. 610, 236 S.E.2d 452 (1977), *overruled on another point, Patterson v. Patterson,* 167 W.Va. 1, 5 n. 1, 277 S.E.2d 709, 712 n. 1 (1981), we recognized that pursuant to W.Va.

Code § 48–2–15, an award of exclusive possession of a marital home to one spouse incident to an award of child custody was a question within the sound discretion of the trial court. Further, in *Blevins v. Shelton,* 181 W.Va. 544, 383 S.E.2d 509 (1989), we explained that an award to the custodial parent of the other parent's property interest stems from the noncustodial parent's obligation to support his or her children. Thus, the focus of inquiry in determining whether one parent should be awarded exclusive possession of a marital residence pursuant to W.Va.Code § 48–2–15(b)(5), should be what will promote the best interests of the parties' children.

■ It is clear that the trial court did not address what was in the best interests of the children. Rather the court determined that Mr. Sanney could not obtain financing for another home because of the difficulties arising from the construction of the marital home in a flood plain. We do not believe that the trial court exercised sound discretion in focusing on Mr. Sanney's ability to purchase a new home rather than on the best interests of the children. The parties' children are teenagers. Under our law, possession of the residence ends when it is no longer necessary to accommodate the rearing of the minor children. *McKinney v. McKinney,* 175 W.Va. 640, 337 S.E.2d 9 (1985). Additionally, we believe that it would be in the best interests of the children to remain in the marital home. As will hereafter be explained, the trial court, and apparently the parties, contemplated that Ms. Sanney would not immediately enter the workforce upon the parties' divorce becoming final. Instead, it was contemplated that Ms. Sanney would become a full-time student in an effort to enable her to reenter the workforce. To remove Ms. Sanney and the children from the marital home under such circumstances would, we believe, subject both Ms. Sanney and the children to considerable financial hardship. We, therefore, conclude that the judgement of the trial court, insofar as it denies Ms. Sanney exclusive possession of the marital home should be reversed.

■ Ms. Sanney also claims that the trial court erred in awarding her rehabilitative

alimony for two years. Specifically, the trial court directed that Ms. Sanney be paid $200.00 per month for two years or until Ms. Sanney should die or remarry. As a general principle, we recognized that in the Syllabus of *Nichols v. Nichols,* 160 W.Va. 514, 236 S.E.2d 36 (1977), that: "Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused."

■ In *Molnar v. Molnar,* 173 W.Va. 200, 314 S.E.2d 73 (1984) we noted that rehabilitative alimony is appropriate to encourage a dependent spouse to become self-supporting by providing alimony for a limited period of time during which gainful employment can be obtained. It rests on the premise that by encouraging a party to become self-reliant, some of the financial problems attendant to divorce may be alleviated, and the dependent spouse may develop a sense of independence and psychological fulfillment.

■ In Syllabus Point 3 of *Molnar v. Molar, id.,* we stated:

There are three broad inquiries that need to be considered in regard to rehabilitative alimony: (1) whether in view of the length of the marriage and the age, health, and skills of the dependent spouse, it should be granted; (2) if it is feasible, then the amount and duration of rehabilitative alimony must be determined; and (3) consideration should be given to continuing jurisdiction to reconsider the amount and duration of rehabilitative alimony.

Ms. Sanney has a high school education, and prior to the birth of the parties's first child she worked as a bankteller. At the time of the proceedings in this case she was 46 years old. It appears that she has expressed some interest in returning to school to obtain an associate nursing degree [1]. Although there is some suggestion that she has health problems that require monitoring,

there is no indication that she is incapable of working once she attains a nursing degree.

As indicated in *Molnar v. Molnar, id.,* the factors to be considered in determining whether rehabilitative alimony is appropriate are length of marriage, age, skills, and health of the dependent spouse. In *Molnar* the Court suggested that rehabilitative alimony was not appropriate where a dependent spouse was in her 60's because of the difficulty in finding work and other factors. In the present case, however, Ms. Sanney, is not in her 60's but in her 40's. Additionally we have indicated that where an dependent spouse has been involved in a long-term marriage, rehabilitative alimony may be inappropriate. The evidence in the present case indicates that Ms. Sanney was married for thirteen years and is pursuing a higher education.

The second broad inquiry as indicated in *Molnar v. Molnar, supra,* in addressing the propriety of rehabilitative alimony is the amount and duration of rehabilitative alimony. It rather clearly appears that the $200.00 per month awarded to Ms. Sanney would, by itself, be insufficient to provide her with sufficient income to support herself during the period of rehabilitation. An examination of the trial court's order, however, indicates that the court directed Ms. Sanney's former husband to maintain health insurance on Ms. Sanney for the two-year rehabilitation period and to pay to Ms. Sanney child support in the amount of $844.52 per month.

■ In this Court's view, the amount of rehabilitative alimony awarded was appropriately within the discretion of the trial court given the overall facts of the case. An increase in the alimony payable to Ms. Sanney would have increased the support which she would have to contribute to the parties' children, and consequently would decrease the amount of child support which she would receive.

■ The third inquiry which should be addressed in conjunction with rehabilitative alimony is whether consideration should be

---

1. During oral argument, counsel advised the Court that Ms. Sanney is actively pursuing a nursing degree.

given to continuing jurisdiction by the trial court to consider the amount and duration of rehabilitative alimony. As indicated in *Molnar v. Molnar, supra,* the purpose of rehabilitative alimony is to encourage a dependent spouse to become self-supporting by providing alimony for a limited period of time during which gainful employment can be obtained. In a case such as the one presently before the Court, for the spouse to become gainfully employed some additional education is required. It is certainly foreseeable that the burden of maintaining a home and raising unemancipated children might to some extent interfere in unanticipated ways with the dependent spouse's obtaining the necessary education according to the schedule originally anticipated. In such circumstances, for rehabilitative alimony to be meaningful and to accomplish the purpose for which it is awarded, the Court believes that a trial court should retain continuing jurisdiction over the case and should retain the right to modify the amount of the award or extend the period of its payment. In *Molnar,* we recognized that a trial court may reserve jurisdiction to modify a rehabilitative alimony award. Relating to this we also said in Syllabus Point 7 of *Wood v. Wood,* 190 W.Va. 445, 438 S.E.2d 788 (1993):

> A rehabilitative alimony award may be extended or modified into a permanent alimony award where the dependent spouse demonstrates a substantial change in the circumstances under which rehabilitative alimony was awarded. In determining whether a substantial change of circumstances exists which would warrant a modification of a rehabilitative alimony award to a permanent alimony award, the trial court may consider a reassessment of the dependent spouse's potential work skills and the availability of a relevant job market, the dependent spouse's age, health and skills, the dependent spouses's inability to meet the terms of the rehabilitative alimony plan, as well as any of the other factors set forth in West Virginia Code § 48-2-16 (1992). The trial court should not consider modifying a rehabilitative alimony award to a permanent alimony award until the dependent spouse has had a reasonable amount of time to comply with the terms of the rehabilitative alimony award.

In the present case, it does not appear that the circuit court retained jurisdiction to modify the award. Accordingly, we conclude that the trial court's order should be modified so that the trial court will retain continuing jurisdiction to modify or extend the rehabilitative alimony award.

■ Another claim made by Ms. Sanney is that the child support payment in this case was improperly calculated. Under the State's child support formula a key determinant of the amount of child support to be paid is the net income of each parent. Ms. Sanney argues that the court, in calculating the amount of child support payable, attributed income to her which she would not have received as a full-time mother and a full—time student. This Court believes that such attribution was inappropriate. The child support which Ms. Sanney is to receive during her rehabilitative period is a factor affecting whether rehabilitation can reasonably be accomplished. Further, the ability of a dependent spouse to devote the time necessary to obtain an education necessary for rehabilitation can profoundly affect whether that spouse can actually obtain the education and be rehabilitated. Under such circumstances, where Ms. Sanney determined that she would become a full-time student as a part of her rehabilitative effort, we believe that the trial court abused its discretion by attributing prospective earnings to her for the same period that she was to be a full-time student. Accordingly, the Court believes that, upon remand, child support should be recalculated.

■ Ms. Sanney also claims that the trial court erred in making equitable distribution of certain items of the parties' property. In Syllabus Point 1 of *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995), we stated that:

> In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying fac-

tual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

Ms. Sanney asserts that the trial court did not follow the steps set forth in Syllabus Point 1 of *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413 (1990), which states:

Equitable distribution under W.Va.Code, 48–2–1, *et seq.*, is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets. The third step is to divide the marital estate between the parties in accordance with the principles contained in W.Va. Code, 48–2–32.

Although the trial court did not rigidly move step by step through this process in making the distribution of the parties' property, it is apparent from the court's order that property was classified as marital or nonmarital. It was valued. It was distributed. Also, the attorney for Ms. Sanney approved the order.

■ One of Ms. Sanney complaint's involving equitable distribution centers upon the values placed upon certain marital vehicles by the family law master and the Court. She essentially claims that the family law master and the court erred in accepting her husband's values for these vehicles, rather than the values which she offered. As has previously been stated in *Burnside v. Burnside, supra,* a finding of fact by a family law master which has been adopted by a circuit court is reviewed under a clearly erroneous standard. Nothing in the record leads this Court to conclude that the family law master and the trial court were clearly wrong.

■ Another complaint relating to equitable distribution centers on $1,500.00 in savings bonds which Ms. Sanney claims her husband cashed and spent on himself. In awarding Mr. Sanney Ms. Sanney's interest in the parties' jointly owned savings bonds, it appears that the trial court was attempting to equalize the total value of all marital as-

sets received by the respective parties. In this Court's view, such equalization was within the discretion of the trial court and was necessary to accomplish an overall equitable distribution of the parties' assets.

■ Ms. Sanney's last complaint relating to the distribution of property focuses on the fact that the trial court ordered the equal division of the cash value of a life insurance policy owned by the parties. Ms. Sanney claims that, from 1973 until 1981, before the parties' marriage, she made the premium payments which generated that cash value. She concedes that thereafter the payments were made from marital funds. The trial court ordered that the cash value be evenly divided between the parties. It appears that in making this ruling the trial court concluded that the insurance policy and its cash value were jointly owned.[2] Equal division of such an asset is appropriate under the rule in Syllabus Point 4 of *Whiting v. Whiting, supra:*

Where, during the course of the marriage, one spouse transfers title to his or her separate property into the joint names of both spouses, a presumption that the transferring spouse intended to make a gift of the property to the marital estate is consistent with the principles underlying our equitable distribution statute.

Based upon the foregoing analysis, we find no error in the court's equitable distribution rulings.

■ Lastly, Ms. Sanney claims that the trial court erred in refusing to award her prospective attorney's fees and certain prospective costs. Ms. Sanney during the development of the case wished to develop expert testimony on the value of the parties' marital home. The trial court refused to preauthorized attorney fees and the costs being sought by Ms. Sanney.

■ Our long-standing rule is that:

In a suit for divorce, the trial chancellor is vested with a wide discretion in determining the amount of ... court costs and

**2.** The policy itself is not in the record, but in a sworn statement of "property and debts" prepared by Ms. Sanney, the names of the owners

are given as "Robert Sanney and Karen Sanney".

counsel fees; and the trial chancellor's determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that he has abused his discretion.

Syllabus Point 3, *Bond v. Bond,* 144 W.Va. 478, 109 S.E.2d 16 (1959). It does appear that during, and at the conclusion of the proceedings, the trial court awarded to Ms. Sanney substantial attorney fees. After examining the documents which have been filed with this Court, and in view of the fact that Ms. Sanney was, in fact, awarded substantial attorney fees, we cannot ·conclude that the trial judge abused his discretion in refusing to award Ms. Sanney the prospective fees and costs which she sought.

For the reasons stated, this case is remanded with direction that the circuit court award to Ms. Sanney the exclusive right to occupy the marital home until the parties' youngest child reaches the age of eighteen. The court is also directed to order that Ms. Sanney's rehabilitative alimony be subject to modification and that the child support payable to Ms. Sanney be recalculated. In all other regards the judgment of the circuit court is affirmed.

Affirmed in part, reversed in part, and remanded with directions.

Justice McGRAW did not participate in the decision of this case.